Case No. 24-4050

In the United States Court of Appeals
for the Ninth Circuit

———————————————

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants,*

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

———————————————

**APPELLANTS' OPENING BRIEF**

———————————————

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

July 30, 2024

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, counsel for Plaintiffs-Appellants make these disclosures:

### JUNIOR SPORTS MAGAZINES, INC.

Junior Sports Magazines, Inc., certifies that it has no parent corporation and no publicly held corporation owns more than ten percent of its stock.

### CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC.

California Youth Shooting Sports Association, Inc. ("CYSSA"), is a California nonprofit organization. CYSSA is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC.

Redlands California Youth Clay Shooting Sports, Inc. ("RCYSS"), is a California nonprofit organization. RCYSS is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC.,

California Rifle & Pistol Association, Inc. ("CRPA"), is a California nonprofit organization. CRPA is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### THE CRPA FOUNDATION

The CRPA Foundation is a California nonprofit organization. The CRPA Foundation is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### GUN OWNERS OF CALIFORNIA, INC.

Gun Owners of California, Inc. ("GOC") is a California nonprofit organization. GOC is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

### SECOND AMENDMENT FOUNDATION

The Second Amendment Foundation ("SAF") is a nonprofit organization. SAF is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Dated: July 30, 2024            **MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
_____
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants Junior Sports*
*Magazines, Inc., Raymond Brown, California*
*Youth Shooting Sports Association, Inc., Redlands*
*California Youth Clay Shooting Sports, Inc.,*
*California Rifle & Pistol Association,*
*Incorporated, The CRPA Foundation, and Gun*
*Owners of California, Inc.*

Dated: July 30, 2024            **LAW OFFICES OF DONALD KILMER, APC.**

s/ Donald Kilmer
_____
Donald Kilmer
*Attorney for Plaintiff-Appellant Second*
*Amendment Foundation*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. That said, as this is a comeback case now assigned to the original panel, Appellants will defer to the Court's preference. This case still raises important First Amendment questions about the rights to free speech, association, and assembly as those rights relate to rights protected by the Second Amendment. This comeback appeal also raises important questions about the administration of justice and implementation of mandates issued by the Court of Appeal to the lower trial courts. Counsel's responses to inquiries from the Court may aid the Court in its decisional process. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement............................................................................. i

Statement Regarding Oral Argument................................................................... iii

Table of Contents.................................................................................................. iv

Table of Authorities ............................................................................................. vi

Jurisdictional Statement ........................................................................................ 1

Statement Regarding Addendum........................................................................... 1

Statement of the Issues Presented ......................................................................... 1

Introduction ........................................................................................................... 2

Statement of the Case ............................................................................................ 3

I.     Factual Background ...................................................................................... 3

II.    Procedural History........................................................................................ 7

III.   The Decision on Appeal ............................................................................. 10

Summary of Argument ........................................................................................ 11

Argument.............................................................................................................. 12

I.     Standard of Review..................................................................................... 12

II.    The Ninth Circuit Has Already Held That Plaintiffs Are Likely to Succeed on the Merits ............................................................................... 14

       A.    This Court Ruled That Section 22949.80, in Its Entirety, Is "Likely Unconstitutional" ................................................................ 15

       B.    The State Waived or Abandoned Any Argument that Only Subsection (a) Was Enjoined Under This Court's First Decision.............................. 17

       C.    Even If the District Court Was Authorized to Reconsider Subsection (b), It Failed to Follow the Law of the Case ............................................. 19

D.  Even If This Court Reconsiders Subsection (b) in Isolation, It Is Still "Likely Unconstitutional"............................................................. 23

1.  Subsection (b) regulates commercial speech. ................................ 24

2.  As this Court already held, subsection (b) fails *Central Hudson* .... 26

3.  Subsection (b) also violates freedom of association. .................... 27

III.  The Remaining Preliminary Injunction Factors Support Relief......................... 29

A.  Irreparable Harm Is Presumed Because Section 22949.80 Violates Appellants' Rights Under the First Amendment....................................... 29

B.  The Balance of Equities and Public Interest Tip Sharply in Appellants' Favor ................................................................................................. 29

IV.  The Preliminary Injunction Should Bind Not Just the Attorney General and His Agents—But Every Person in Active Concert or Participation With Him 32

V.  The District Court Failed to Follow the Rule of Vertical Precedent, the Law of the Case, and the Rule of Mandate; This Court has the Power to Issue an Appropriate Corrective Relief ................................................................ 35

Conclusion................................................................................................. 42

Certificate of Compliance........................................................................... 43

Certificate of Service ................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civ. Libs. Union v. Alvarez,*
  679 F.3d 583 (7th Cir. 2012) ......................................................... 30

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ....................................................... 12

*Bakewell v. United States,*
  110 F.2d 564 (8th Cir. 1940) ......................................................... 40

*Brockett v. Spokane Arcades,*
  472 U.S. 491 (1985) ....................................................................... 22

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ....................................................................... 13

*Cal. Chamber of Com. v. Council for Educ. & Research on Toxics,*
  29 F.4th 468 (9th Cir. 2022) ......................................................... 33

*Cantwell* v. *Connecticut,*
  310 U.S. 296 (1940) ....................................................................... 28

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,*
  447 U.S. 557 (1980) ..........................................................11, 15, 24

*Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.),*
  840 F.2d 701 (9th Cir. 1998) ......................................................... 12

*Clem v. Lomeli,*
  566 F.3d 1177 (9th Cir. 2009) ....................................................... 17

*Cnty. of Allegany v. Am. Civ. Libs. Union,*
  492 U.S. 573 (1989) ....................................................................... 20

*Crime Just. & Am., Inc. v. Honea,*
  876 F.3d 966 (9th Cir. 2017) ......................................................... 17

*Day v. Orrick, Herrington & Suttcliffe, LLP,*
  2022 U.S. App. LEXIS 24319 (9th Cir. Aug. 29, 2022) ............... 17

*Dep't of Hous. & Urb. Devel. v. Rucker,*
  535 U.S. 125 (2002) ....................................................................... 13

vi

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .................................................. 39

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ................................... 13

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021) .................................. 39

*Duncan v. Bonta*,
83 F.4th 803 (9th Cir. 2023) .................................... 37

*Ex parte Young*,
209 U.S. 123 (1908) ................................................ 33

*First Nat'l Bank of Boston v. Bellotti*,
435 U.S. 765 (1978) ................................................ 36

*Fresno Rifle & Pistol Club, Inc., v. Van De Kamp*,
965 F.2d 723 (9th Cir. 1992) ................................... 37

*Gately v. Massachusetts*,
2 F.3d 1221 (1st Cir. 1993) ..................................... 40

*Gitlow* v. *New York*,
268 U.S. 652 (1925) ................................................ 28

*Golden State Bottling Co. v. NLRB*,
414 U.S. 168 (1973) ............................................ 33, 34

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ................................................ 13

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013) ................................. 30

*Harris v. Bd. of Supervisors, L.A. Cnty.*,
366 F.3d 754 (9th Cir. 2004) ................................... 13

*Herrgott v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Cavanaugh)*,
306 F.3d 726 (9th Cir. 2002) ................................... 15

*Hickman v. Block*,
81 F.3d 98 (9th Cir. 1996) ....................................... 38

*Hutto v. Davis,*
    454 U.S. 370 (1982) ........................................................................... 19, 40

*In re Sanford Fork & Tool Co.,*
    160 U.S. 247 (1895) .................................................................................. 2

*Index Newsps. LLC v. U.S. Marshalls Serv.,*
    977 F.3d 817 (9th Cir. 2020) ................................................................ 30

*Jr. Sports Mags., Inc. v. Bonta,*
    No. 22-cv-04663 (C.D. Cal Mar. 20, 2024) ...................................... 8, 10

*Jr. Sports Mags., Inc., v. Bonta,*
    80 F.4th 1109 (9th Cir. 2023) .........................................................passim

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ............................................................................... 20

*Kimball v. California,*
    590 F.2d 768 (9th Cir. 1979) ................................................................ 13

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) .............................................................. 30

*Mahnich v. Southern S.S. Co.,*
    321 U.S. 96 (1944) ................................................................................ 39

*Martin v. City of Struthers,*
    319 U.S. 141 (1943) .......................................................................... 24, 36

*Martin v. Hunter's Lessee,*
    14 U.S. 304 (1816) ................................................................................ 18

*McDonald v. Chicago,*
    561 U.S. 742 (2010) ............................................................................... 39

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ................................................................ 29

*Merritt v. Mackey,*
    932 F. 2d 1317 (9th Cir. 1991) ............................................................. 13

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 240 (1959) ......................................................................14, 28, 29

*Nat'l Rifle Ass'n v. Vullo*,
    602 U.S. 175 (2024) .................................................................... 29

*Nat'l Spiritual Assem. of Ba'hais of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assem. of Ba'hais of U.S., Inc.*,
    628 F.3d 837 (7th Cir. 2010) ..................................................... 34

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ................................................................. 38, 39

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................... 29

*Palko v. Connecticut*,
    302 U.S. 319 (1937) .................................................................... 28

*Peruta v. California*,
    582 U.S. 943 (2017) .................................................................... 38

*Peruta v. San Diego Cnty.*,
    824 F.3d 919 (9th Cir. 2016) ..................................................... 38

*Quern v. Jordan*,
    440 U.S. 332 (1979) .................................................................... 27

*Red Lion Broad. Co. v. FCC*,
    395 U.S. 367 (1969) .................................................................... 36

*Regal Knitwear Co. v. NLRB*,
    324 U.S. 9 (1945) ................................................................. 33, 34

*Richmond Newsps. v. Virginia*,
    448 U.S. 555 (1980) .................................................................... 36

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
    91 F.3d 914 (7th Cir. 1996) ....................................................... 34

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ................................................... 31

*Rucker v. Davis*,
    237 F.3d 1113 (9th Cir. 2001) ................................................... 13

*Safari Club Int'l v. Bonta*,
    No. 22-cv-01395 (E.D. Cal. July 6, 2024) ................................ 10

ix

*Saga Int'l, Inc. v. John D. Brush & Co.,*
    984 F. Supp. 1283 (C.D. Cal. 1997) ............................................ 34

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) .................................................... 14, 20

*Sibbald v. United States,*
    37 U.S. 488 (1838) ......................................................... 14

*Silveira v. Lockyer,*
    312 F.3d 1052 (9th Cir. 2002) ............................................... 38

*Silvester v. Becerra,*
    583 U.S. 1139 (2018) ....................................................... 36

*Sorenson Commcns. v. FCC,*
    567 F.3d 1215 (10th Cir. 2009) ............................................. 24

*Stanley v. Georgia,*
    394 U.S. 557 (1969) ........................................................ 36

*Staub v. City of Baxley,*
    355 U.S. 313 (1958) ........................................................ 28

*Teixeira v. Cnty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) ............................................... 41

*Thomas v. Bible,*
    983 F.2d 152 (9th Cir. 1993) ............................................... 27

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
    393 U.S. 503 (1969) ........................................................ 35

*U.S. West, Inc. v. FCC,*
    182 F.3d 1224 (10th Cir. 1999) ............................................. 24

*United States v. Bell,*
    5 F.3d 64 (4th Cir. 1993) .................................................. 41

*United States v. Bell,*
    988 F.2d 247 (1st Cir. 1993) ............................................... 41

*United States v. Dreyer,*
    804 F.3d 1266 (9th Cir. 2015) .............................................. 17

*United States v. Duarte,*
    2024 U.S. App. LEXIS 17601 (9th Cir. July 17, 2024)............................... 37

*United States v. ITT Rayonier, Inc.,*
    627 F.2d 996 (9th Cir. 1980)...............................................................34, 35

*United States v. Kikumura,*
    947 F.2d 72 (3d Cir. 1991) ..................................................................... 41

*United States v. Moran,*
    393 F.3d 1 (1st Cir. 2004)........................................................................ 13

*United States v. Pate,*
    754 F.3d 550 (8th Cir. 2014)................................................................... 40

*United States v. Rahimi,*
    219 L. Ed. 2d 351 (2024)......................................................................... 37

*Va. State Bd. of Pharmacy v. Va. Citizens Council, Inc.,*
    425 U.S. 748 (1976).................................................................................. 24

*Verizon Nw. v. Showalter,*
    282 F. Supp. 2d 1187 (W.D. Wash. 2003) .............................................. 25

## Statutes

Assemb. B. 2571, 2021-2022 Reg. Sess., § 1(a)-(b) (Cal. 2022).................... 26

Cal. Bus. & Prof. Code § 22581 ..................................................................... 32

Cal. Bus. & Prof. Code § 22949.80..........................................................passim

Cal. Const. art. 5, § 13 .................................................................................... 35

Cal. Penal Code § 29615 .................................................................................. 7

Cal. Penal Code § 29655 .................................................................................. 7

## Other Authorities

18 James W. Moore et al.,
    *Moore's Federal Practice* § 134.02[2], (3d ed. 2015) ............................ 40

Jones, Basil,
    "Stare Decisis" in 26 *The American and English Encyclopedia of Law* (David S. Garland
    & Lucius P. McGehee eds., 2d ed. 1904) ................................................ 40

Press Release, *Attorney General Bonta, L.A. City Attorney Feldstein Soto, Announce $500,000 Settlement with Tilting Point Media for Illegally Collecting and Sharing Children's Data* (June 18, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-la-city-attorney-feldstein-soto-announce-500000 (last accessed July 18, 2024) ................................................................................................................ 31

Scalia, Antonin & Bryan A. Garner,
*Reading Law: The Interpretation of Legal Texts* (Thomson/West, Kindle ed. 2012) ...... 14

Tribe, Laurence H.,
*Comment*, in Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* (1997) ................................................................................................................ 14

**Rules**

Fed. R. App. P. 28 ........................................................................................................ 17

Fed. R. Civ. P. 65 ................................................................................................... 32, 33

## JURISDICTIONAL STATEMENT

Because this suit arises under the Constitution and laws of the United States, the district court had original jurisdiction under 28 U.S.C. § 1331. 5-ER-979. Because this is a 42 U.S.C. § 1983 action, brought to redress the deprivation of constitutional rights under the color of law, the lower court also had jurisdiction under 28 U.S.C. § 1343(a)(3). 3-ER-234.

The district court denied Appellants' motion for preliminary injunction on June 18, 2024, and served the decision on the parties on June 24, 2024. 1-ER-2-14. Appellants filed a timely notice of appeal on June 28, 2024, 2-ER-17, according to Federal Rules of Appellate Procedure 3 and 4 and Ninth Circuit Rules 3-1–3-3.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because the order on review is an appealable order denying Appellants' motion for preliminary injunction.

Under Ninth Circuit General Orders 1.12 and 3.6(d) and this Court's July 22, 2024 Order (ECF No. 6.1), this matter has been reassigned to the panel that decided the original appeal No. 22-56090.

## STATEMENT REGARDING ADDENDUM

An addendum reproducing relevant constitutional and statutory provisions is bound with this brief.

## STATEMENT OF THE ISSUES PRESENTED

1.      This Court already held that Appellants are entitled to a preliminary injunction because "[California Business & Professions Code] § 22949.80 is likely unconstitutional under the First Amendment." The panel decision was not limited to

1

any particular provision of section 22949.80, and the State never suggested that it should be until after the case returned to the district court. Did the lower court err by disregarding this Court's mandate, enjoining the enforcement of only subsection (a)?

2.      Did the district court err in issuing a preliminary injunction directed only at the California Attorney General's office and not all public officials expressly tasked with enforcing section 22949.80, including district attorneys, county counsels, and city attorneys?

3.      What remedial orders can this Court issue, or rules of law can this Court articulate, to ensure that trial courts in the Ninth Circuit faithfully interpret and obey its mandates?

## INTRODUCTION

When a trial court fails to adhere to an appellate decision, it subjects itself to at least two forms of correction. The aggrieved party, as is the case here, may appeal the new decision. Another remedy is for the appellate court to issue a writ of mandamus, directing the lower court to adhere to its decision and the mandate of the Court of Appeals. *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255 (1895). The plain language of this panel's first opinion enjoined *all* of section 22949.80. This statute itself authorizes the California attorney general, as well as all district attorneys, city attorneys, and county counsels in the state, to enforce it. For justice to prevail, this Court's earlier decision—enjoining all state actors against enforcing the entire statute—must result in the preliminary injunction that governs this case until final judgment is entered.

Most of this opening brief will recapitulate the arguments and briefing filed as part of Appellants' Rule 8 motion for preliminary injunction pending appeal,[1] in addition to fleshing out other arguments to support the relief requested.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

In June 2022, the California Legislature passed—and (within hours) Governor Gavin Newsom signed—urgency legislation known as Assembly Bill 2571. 3-ER-271-75. The bill added section 22949.80 to the California Business & Professions Code, and it took effect immediately. 3-ER-275. Months later, the legislature adopted Assembly Bill 160 ("AB 160") in a (fruitless) attempt to address the constitutional infirmities of the new law and void this lawsuit. 2-ER-159.[2] But as amended, section 22949.80 still prohibits "firearm industry members" from making or distributing any "communication" "in exchange for monetary compensation" if the speech (1) "offers" or "promotes" a "firearm-related product," (2) is designed, intended, or could reasonably be considered "attractive to minors," and (3) seeks to encourage the audience to "engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6).

Subsection (b) of section 22949.80 (the part of the whole that the State claims was unadjudicated in the first appeal) imposes the ruinous civil penalties of subsection (e) if a firearm industry member who "publish[es] material directed to

---

[1] Appellants' reply brief on that motion is due three days after this opening brief is set to be filed.

[2] For ease of reference, Appellants refer to AB 2571, as adopted and as later amended by AB 160, as "section 22949.80."

3

minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, … knowingly use[s], disclose[s], compile[s], or allow[s] a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product."

Somewhat irrationally, subsection (d) appears to forbid (or withholds authorization from) the same firearm industry members whose business model includes the "collect[ion] or ret[ention of] age information about [the] users or subscribers of products or services provided." *Id.* Thus, not only hampering enforcement of subsection (b), but manages to destroy the business model of any publication that uses subscribers lists and membership rolls.

Section 22949.80 imposes civil penalties of up to twenty-five thousand dollars ($25,000) for each violation. *Id.* § 22949.80(e)(1). Civil actions can be commenced to recover those fines by Defendant Attorney General Rob Bonta ("the State") or "by any district attorney, county counsel, or city attorney in any court of competent jurisdiction." *Id.* Section 22949.80 also authorizes any "person harmed by a violation of this section" to "commence a civil action to recover their actual damages," as well as attorney's fees and costs. *Id.* § 22949.80(e)(3)-(5).

Section 22949.80 targets speech not only "designed or intended" for minors, but that which might "reasonably appear ... to be attractive to minors." *Id.* Though the phrase is open to broad subjective interpretation, the law provides some (inadequate) "guidelines" for courts tasked with determining whether a communication is

"attractive to minors." *Id.* § 22949.80(a)(2). "[A] court shall consider the totality of the circumstances," including, but not limited to, whether the communication:

(A)    Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B)    Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C)    Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D)    Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E)    Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F)    Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2). It would be difficult to come up with speech attributes that are more content-based than this list.

Not satisfied with content censorship, section 22949.80 is also a viewpoint-based regulation of speech and press that only bars some speakers from "advertising and marketing" "firearm-related products." Indeed, the law targets only "firearm industry members," which the law defines in two ways:

(A)    A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B)    A person, firm, corporation, company, partnership,

5

society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)    Advertises firearm-related products.

(ii)    Advertises events where firearm-related products are sold or used.

(iii)    Endorses specific firearm-related products.

(iv)    Sponsors or otherwise promotes events at which firearm-related products are sold or used.

Section 22949.80 thus does not apply to members of the book, movie, television, and video game industries, but it does apply to organizations formed to promote and preserve the rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses or firearm-safety training, and gun show promoters—not just firearms manufacturers and retailers. Cal. Bus. & Prof. Code § 22949.80(c)(4).

Under section 22949.80 (as amended), "[m]arketing or advertising means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." *Id.* § 22949.80(c)(6).

Finally, AB 160 amended section 22949.80 to provide an exception for speech offering or promoting (1) "any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event," or (2) "membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising

6

event, youth hunting program, or outdoor camp." *Id.* § 22949.80(a)(3). This post-litigation exception recognizes that, under California law, minors may lawfully possess and use firearms and ammunition. For instance, minors may possess firearms when they are engaged in or traveling to or from recreational sports if a parent or guardian is present or if the minor is accompanied by another responsible adult and their parent has given written consent. Cal. Penal Code §§ 29615(a)-(b), 29655; *see also* 3-ER-554 (California Department of Fish & Wildlife parental consent form for minor to "handle, manipulate, and/or use firearms" during the state hunter's safety course).[3]

## II. PROCEDURAL HISTORY

Appellants sued in the Central District of California, challenging section 22949.80 because it violates the First Amendment rights to free speech, free press, and free association, as well as the right to equal protection under the law. 3-ER-233-70. Soon after, Appellants moved for a preliminary injunction halting the enforcement of section 22949.80, in its entirety. 2-ER-158. Just days before Appellants' motion was to be heard, the State informed Appellants that the legislature was considering a bill to amend the statute. With that development, the district court vacated the hearing and set a status conference for September 12, 2022. 2-ER-159. The district court entertained supplemental briefing by the parties, conducted a hearing, and ultimately denied Appellants' initial motion for preliminary injunction. 2-ER-158-208. Appellants appealed.

---

[3] Similarly, if the minor's parent consents, and the minor is at least 16 or is engaging in recreational sports on "lands lawfully possessed by their parent or guardian," no adult even need be present. Cal. Penal Code § 29615(c)-(d).

On September 13, 2023, this Court reversed the denial of Appellants' first motion for preliminary injunction in a unanimous decision. *Jr. Sports Mags., Inc.*, *v. Bonta*, 80 F.4th 1109 (9th Cir. 2023). Its mandate is set forth in the conclusion of that opinion: "In sum, we hold that § 22949.80 is likely unconstitutional under the First Amendment, and we thus REVERSE the district court's denial of a preliminary injunction and REMAND for further proceedings consistent with this opinion." *Id.* at 1121.

The State moved for rehearing en banc, Appellees' Petition for Rehearing En Banc, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Nov. 13, 2023), ECF No. 49, and Appellants unsuccessfully moved for an injunction against enforcement of section 22949.80 while that petition was pending, Order, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Oct.11, 2023), ECF No. 48. After no judge called for a vote to rehear the case en banc, the State's petition for rehearing was denied. Order, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Feb. 20, 2024), ECF No. 52. The mandate was issued on February 28, 2024. Mandate, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Feb. 28, 2024), ECF No. 53.

On remand, the parties agreed to an extension of time for the State to file an answer on the grounds that it needed more time to consider its options, including early resolution of this case. Stipulation Extending Deadline to Respond to Complaint at 2, *Jr. Sports Mags., Inc. v. Bonta*, No. 22-cv-04663 (C.D. Cal Mar. 20, 2024), ECF No. 52. The district court granted the extension and set a status conference regarding filing and spreading the mandate. Order Extending Deadline to Respond to Complaint, *Jr. Sports Mags.*, No. 22-cv-04663 (C.D. Cal Mar. 20, 2024), ECF No. 53; 2-ER-104-107 [Barvir Dec ISO MPI on remand].

8

To prepare for that conference, the parties met and conferred to discuss potential avenues for the efficient disposition of this case. 2-ER-105. The State refused to enter into a stipulation for entry of an order for a final judgment enjoining enforcement of section 22949.80. *Id.* It also refused to enter into a stipulation for the entry of an order for a preliminary injunction pending further discussions or litigation. *Id.* Instead, the State urged Appellants to renew their motion for a preliminary injunction, claiming that it would not be much work because the State would either not oppose the motion or would file a non-opposition. *Id.* Less than a day later, the State withdrew its non-opposition, raising a new theory that this Court had only found subsection (a) unconstitutional and that, if Appellants sought a broader injunction, the State would oppose it. 2-ER-105-106.

During the April 8, 2024, status conference, the State requested 30 more days to respond to the complaint over Appellants' objection that, without a preliminary injunction in place, the delay risked the further violation of their First Amendment rights in violation of this Court's order. 2-ER-106. The court denied the oral request for a preliminary injunction, set a second status conference, and encouraged the parties to continue efforts to resolve the case. *Id.* In compliance with the court's directive, the parties continued efforts to negotiate a settlement and the scope of any order that would address this Court's mandate. *Id.* But because the parties continue to disagree over the scope of this Court's opinion, no agreement could be reached. 2-ER-106-107.[4]

---

[4] On April 18, 2024, Appellants filed a notice of the preliminary injunction issued in the related case of *Safari Club International v. Bonta*, enjoining the entirety of

Having been unable to obtain the injunctive relief that they have sought from Day 1 (and this Court already ruled they were entitled to), Appellants were forced to move for an order enforcing the mandate and enjoining the enforcement of section 22949.80. 3-ER-366. The State opposed in part, arguing that any injunction should be limited to subsection (a). Defendant's Limited Opposition to Motion to Enforce the Mandate at 6-10, *Jr. Sports Mags*, No. 22-cv-04663 (C.D. Cal May 20, 2024), ECF No. 62.

## III.   THE DECISION ON APPEAL

During the hearing on Appellants' motion, the district court revealed that it was inclined to adopt the State's position. The court and the parties did, however, discuss certifying a question to the original panel of this Court to determine the scope of the mandate. 2-ER-36. Instead, on June 24, 2024, the district court entered an order (filed in chambers on June 18, 2024) enjoining only subsection (a), thus leaving all other sections of the "likely unconstitutional" statute available for enforcement. 1-ER-13-14. The court also declined to enjoin enforcement by the district attorneys, county counsels, and city attorneys authorized to enforce section 22949.80, electing to limit the injunction to enforcement actions by the Attorney General's office. *Id.* Instead, the court ordered the Attorney General to notify these officials of this lawsuit and that subsection (a) has been preliminarily enjoined. *Id.*

---

section 22949.80. Plaintiffs' Notice of Issuance of Preliminary Injunction in *Safari Club*. 2-ER-144-149. Soon after, the State filed a motion to set aside the injunction issued in *Safari Club* and substitute an order enjoining only subsection (a). *Safari Club Int'l v. Bonta*, No. 22-cv-01395 (E.D. Cal. July 6, 2024), ECF No. 40. The State's motion was heard on July 16, 2024.

10

As explained below, this case in on appeal again because the trial court violated the mandate rule, law of the case, and vertical precedent. Furthermore, assuming that the district court should have reviewed de novo subsection (b), its analysis of that subsection was superficial, irrational, and failed to apply the reasoning of this Court's opinion interpreting the commercial speech doctrine of the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980).

## SUMMARY OF ARGUMENT

This matter comes back to this Court—with no intervening new facts and no intervening new law—because Appellants could not obtain the relief granted by the mandate in *Junior Sports Magazines, Inc., v. Bonta*, 80 F.4th 1109 (9th Cir. 2023). In the plainest of terms, that opinion states that "[California Business & Professions Code] § 22949.80 is likely unconstitutional under the First Amendment, and we thus REVERSE the district court's denial of a preliminary injunction and REMAND for further proceedings consistent with this opinion." *Id.* at 1121.

After remand—and for the first time in this litigation without the district court finding that this argument had been abandoned or waived—the State argued that this Court, despite the plain language of the opinion, did not really mean to enjoin all of section 22949.80. California's Attorney General had somehow divined that this Court meant to enjoin only subsection (a), and this appeal became necessary when the district court adopted that position in its order (only partially) enforcing the mandate. Furthermore, and despite the plain language of the statute allowing enforcement of section 22949.80 by "State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction, " *id.*

22949.80 (e)(1), and despite authority under Rule 65, the district court limited injunctive relief to only the Attorney General.

Appellants here seek the relief they were already granted in this Court's previous opinion, a preliminary injunction pending appeal enjoining section 22949.80—in its entirety—against all public officials authorized by that statute to enforce this unconstitutional law. This Court can also ensure compliance with its prior decision by either: (a) granting the pending motion under this new appellate case number and retaining jurisdiction to supervise the proceedings below or (b) issuing a writ of mandamus to the district court with specific instructions on implementing the mandate from the original appeal and then dismissing this appeal.[5]

## ARGUMENT

### I. STANDARD OF REVIEW

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.)*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain relief, Appellants must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Because the burdens at this stage track those at trial,

---

[5] Even though this case has already been reassigned to the panel that heard Appellants' first appeal, it is unclear whether that panel can recall the mandate under the prior case number and reissue that mandate with specific instructions. Cir. Rule 41-1 Advisory Comm. Note ("A motion to stay or recall the mandate will not be routinely granted.").

Appellants bear only "the initial burden of making a colorable claim that [their] First Amendment rights have been infringed, or are threatened with infringement," then "the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (citation omitted).

Generally, this Court reviews the denial of a motion for preliminary injunction for abuse of discretion. *See, e.g.*, *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001) (en banc), *rev'd on other grounds*, *Dep't of Hous. & Urb. Devel. v. Rucker*, 535 U.S. 125 (2002). But when a district court's ruling on a motion for preliminary injunction rests only on the law and the facts are either established or undisputed, appellate court review of whether the trial court applied the appropriate legal standard is de novo. *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754 (9th Cir. 2004).

When pure questions of law are resolved in an appeal from the grant or denial of a preliminary injunction, the Supreme Court has held that those legal conclusions constitute binding vertical precedent. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014) (relying on the analysis of the scope of the Religious Freedom Restoration Act in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006) even though *Gonzales* was on appeal from a preliminary injunction).

Furthermore, once an appellate court has issued its mandate, it is bound by its own prior decision unless new facts are presented or a higher court has issued an opinion changing the law. *Merritt v. Mackey,* 932 F. 2d 1317, 1320 (9th Cir. 1991) (quoting *Kimball v. California,* 590 F.2d 768, 771 (9th Cir. 1979)); *see also United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004) (noting that this branch of the doctrine "binds … a successor appellate panel in a second appeal in the same case").

## II.  THE NINTH CIRCUIT HAS ALREADY HELD THAT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

A three-judge panel of this Court already held that Appellants are likely to succeed on the merits and are, therefore, entitled to a preliminary injunction against enforcement of section 22949.80 while this case proceeds below. *Jr. Sports Mags.*, 80 F.4th at 1120-21. Those findings and conclusions are binding on the district court (and this Court) and represent the "law of the case." They are not some mere suggestion or evidence of the rule laid down by this Court.[6] Nor are they open to reexamination by an inferior court. Indeed, it is well-settled that:

> [W]hatever was before the Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

*Sibbald v. United States*, 37 U.S. 488 (1838). *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 240, 245 (1959). And lower courts must adhere not just to the result obtained by the higher court but also to any reasoning necessary to that result. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (and collected cases).

---

[6] Professor Laurence Tribe has written about the interpretation of legal texts:
> Like Justice Scalia, I never cease to be amazed by the arguments of judges, lawyers, or others who proceed as though legal texts were little more than interesting documentary evidence of what some lawgiver had in mind.
> ....
> [I]t is the text's meaning, and not the content of anyone's expectations or intentions, that binds us as law.

Laurence H. Tribe, *Comment*, in Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 65, 66 (1997) (discussed in Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 295 (Thomson/West, Kindle ed. 2012)).

The State contends that this Court's opinion was limited to subsection (a)—a claim it never once made before this case returned to the district court on remand. The plain text of the panel opinion contradicts the State's claim. *Jr. Sports Mags.*, 80 F.4th at 1120-21 ("In sum, we hold that § 22949.80 is likely unconstitutional under the First Amendment.") This language is not susceptible to two meanings. It is not overly complex or lacking in clarity; it does not require "Talmudic scholars nor skill[s] in the use of Urim and Thummin to construe it." *Herrgott v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729 (9th Cir. 2002). The State's claim that there was some latent ambiguity in this Court's opinion lacks merit. The State was wrong, and the district court was wrong to issue an order defying this Court.

## A. This Court Ruled That Section 22949.80, in Its Entirety, Is "Likely Unconstitutional"

In adjudicating Appellants' post-mandate preliminary injunction, it is section 22949.80—in its entirety—that is "likely unconstitutional." *Jr. Sports* at 1120-21. As this Court already found, directly marketing legal firearm-related products to minors is protected commercial speech under the First Amendment (as long as it otherwise complies with state and federal law). *Id.* at 1116-17. This Court also held that the State's purported interest in restricting that speech vis-à-vis section 22949.80 could not save the law under *Central Hudson*. *Id.* at 1117-20. It strains credulity to think that any portion of section 22949.80 is still somehow valid.

Subsections (a) and (b) both restrict "firearm industry members" from engaging in marketing and advertising of "firearm-related products" directed to youth. This Court expressly held that this commercial speech is protected by the First

Amendment in the first appeal. Subsection (b) prohibits the "use, disclos[ur]e, and compil[ation], of personal information … of [a] minor … for the purpose of marketing or advertising to … minor[s] any firearm-related product." Cal. Bus. & Prof. Code § 22949.80 (b). If marketing firearm-related products to minors is protected speech, then the use and maintenance of mailing lists necessary to conduct such marketing activities must also be protected. *See infra* Part II.D. Otherwise, Junior Sports Magazines and the other institutional plaintiffs could not even "use" their own mailing lists, compiled as part of subscription or membership drives, to engage in the very same speech (marketing or advertising to minors) that was found to be protected speech. Nor could a manufacturer's collection of owner information on product warranty cards be used to contact customers about product updates or recalls.[7] Thus the district court's superficial analysis of subsection (b) is deeply flawed, even assuming that subsection (b) was subject to de novo review by the district court at all, which it was not. *See infra* Part V.

The State's post-remand position that only subsection (a) should be subject to the injunction is borderline frivolous. The relief Appellants sought in their original motion for preliminary injunction was explicitly laid out in the proposed order filed with that motion. It requested that "during the pendency of this action, the named

---

[7] Furthermore, subsection (d) directly contradicts subsection (b) by appearing to prevent (or withholding authorization for) firearm industry members collecting or retaining age information about their users or subscribers. This makes the whole statute, and specifically subsection (b), impossible to comply with. The remaining sections have no practical effect if section 22949.80's speech restrictions are unconstitutional and unenforceable. Subsection (c) sets forth definitions for the rest of the statute. Subsection (e) lays out the civil penalties and provides enforcement authority. And subsection (f) is the vestigial severability clause the State now invokes.

[d]efendant, his employees, agents, successors in office, and all District Attorneys, County Counsel, and City Attorneys holding office in the state of California, as well as their successors in office, are enjoined and restrained from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, any enforcement of AB 2571, codified at Business & Professions Code section 22949.80."

### B. The State Waived or Abandoned Any Argument that Only Subsection (a) Was Enjoined Under This Court's First Decision

Nothing in the panel opinion or the mandate suggests that post-appeal relief in the district court should be narrower than what Appellants requested in their original motion. More to the point, the State made this "only subsection (a)" argument, for the first time after remand. This constitutes either abandonment or waiver of the issue. Fed. R. App. P. 28 (a)(8)(A), (b) (Appellate brief must include the party's "contentions and reasons for them, the citations to the authorities and parts of the record on which [the party] relies."). *See also Day v. Orrick, Herrington & Sutcliffe, LLP*, 2022 U.S. App. LEXIS 24319, *1-2 (9th Cir. Aug. 29, 2022) (party waived arguments it did not address in its answering brief but tried to raise in its petition for rehearing) (citing *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("Generally, an appellee waives any argument it fails to raise in its answering brief."); *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (appellee waived issue by "declining to advance any argument" regarding the issue in his opening brief)).

17

While the State's Answering Brief in the first appeal does repeatedly cite subsection (a), the context of those citations makes clear that the State was merely explaining the function and effect of the statute. Appellees' Answering Brief 4-5, 15-16, 20, 34, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Jan. 27, 2023), ECF No. 20. Not once did the State argue that only subsection (a)'s constitutionality was the sole issue on appeal. Nor did it ask the panel to limit the scope of the first appeal to only subsection (a) in its principle answering brief.

The State's Petition for Rehearing En Banc is even more damning in this respect. There the State identified "[t]he law at issue here is Section 22949.80 of the California Business and Professions Code." Appellees' Petition for Rehearing En Banc at 3, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Nov. 13, 2023), ECF No. 49. It also acknowledged that Appellants here (and in the companion *Safari Club* case) "moved for a preliminary injunction against Section 22949.80 *in its entirety.*" *Id.* at 6 (emphasis added). Nor was the petition's analysis limited to any one subsection. *Id.* On the contrary, it speaks broadly about the policy interests advanced by the legislature and its motive for enacting section 22949.80 as a whole. *Id.* Furthermore, the State's petition did not even suggest that en banc rehearing was necessary to clarify or limit the scope of the original panel's decision to only subsection (a). And no judge on the Court even called for a vote to rehear the matter en banc. Order, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Feb. 20, 2024), ECF No. 52.

If the State was suggesting on remand that the panel's holding was overbroad or otherwise in error, then its remedy—from as far back in federal judicial practice as *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816)—lies in a petition to the Supreme Court. It

18

does not lie in advocating that the trial court defy a decision issued by a court of higher authority. "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent … must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis,* 454 U.S. 370, 375 (1982). The remedy mandated by this Court was the issuance of the preliminary injunction originally denied in the district court, one that enjoins enforcement of section 22949.80 *in its entirety* by the Attorney General and his agents, as well as all District Attorneys, City Attorneys, and County Counsels charged with enforcing the law on behalf of the People of the State. It is not the place of the State or the district court to second-guess that decision and its mandate on remand.

Lastly, it is more than frivolous for the State to suggest that the original panel did not know how to fashion its opinion or mandate to limit its scope to subsection (a). To believe that, one would have to assume that three judges of this Court did not know where the parentheses and small "a" keys were on their keyboards when they drafted an opinion that concludes with "§22949.80 is likely unconstitutional under the First Amendment." *Jr. Sports Mags.*, 80 F.4th at 1121.

### C. Even If the District Court Was Authorized to Reconsider Subsection (b), It Failed to Follow the Law of the Case

This second appeal from the same district court was made necessary because the trial judge below entertained California's novel theory (raised for the very first time after remand) that this panel made an error in their written opinion and/or overlooked other existing precedents relating to the scope of relief when a court invalidates a law on First Amendment grounds. The trial court tried to invoke

unpersuasive exceptions to the rules of precedent, law of the case, and rule of mandate, but they all ring hollow.

The trial court's first justification for veering from the plain language of this panel's decision is that the original panel did not expressly discuss subsection (b) in its opinion. 1-ER-10. This is plain error. The trial court's duty is not limited to doing a text search of the opinion to see whether subsection (b) gets cited. Its duty is to apply the rule of precedent and stare decisis to the facts of the case. "As a general rule, the principle of stare decisis directs [courts] to adhere not only to the holdings of [their] prior cases, but also their explications of the governing rules of law." *Cnty. of Allegany v. Am. Civ. Libs. Union*, 492 U.S. 573, 668 (1989) (Kennedy, J., Rehnquist, C.J., White, J., Scalia, J., concurring in the judgment in part and dissenting in part) (overruled on other grounds *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022)). Furthermore, when construing a prior (and higher) court's opinion, a lower court must adhere to the reasoning that was necessary to the earlier court's decision. *See Seminole Tribe*, 517 U.S. at 67. As argued below, *see infra* Part II.D—and only if one accepts that the panel's opinion is ambiguous on this point, a point Appellants do not concede— applying the reasoning of the original panel's application of *Central Hudson* leads to only one conclusion, that the entirety of Section 22949.80 is unconstitutional because subsection (b) still interferes with a minor's (and their parents') access to marketing information about firearms and firearm-related products that would interest said minors. *Jr. Sports Mags.*, 80 F.th at 1115-17.

The second justification the trial court invokes for its narrower order is that subsection (b) regulates different conduct than subsection (a). But this rationale is

possible only if one accepts a superficial and deeply flawed analysis of Section

22949.80(b), which states:

> [A] firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, *shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile*, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is *for the purpose of marketing or advertising to that minor any firearm-related product.*

(Emphasis added.)

Subsection (b) must still be subjected to the same analysis as the whole of

Section 22949.80 (which this panel has already condemned to constitutional

purgatory) because it prevents otherwise lawful commercial activity (maintaining a

subscribers or membership list) if it is done "*for the purpose of marketing or advertising to*

*that minor any firearm-related product." Id.* This Court expressly found that such marketing

is constitutionally protected commercial speech. *See Jr. Sports Mags.*, 80 F.4th at 1113,

1121. It is patently irrational to think that a magazine publisher does not maintain a

subscriber list or "use" that subscriber list, or that said magazine does not have actual

knowledge that its "use" its own subscriber list contains junior shooters (minors)

since that is its exact business model of the lead Appellant in this case. On these facts

alone, any Appellant in this case would be strictly liable for simply compiling and

using its own subscriber list for its intended purpose. Cal. Bus. & Prof. Code

§ 22949.80(e)(1)-(6). And at $25,000 for each violation, such a burden on regular

commercial speech activities has a chilling effect because such severe sanctions are

intended to bankrupt (or threaten to bankrupt or compel self-censorship of)

publishers like Junior Sports Magazines and the other institutional Appellants.

Neither justification articulated by the trial court for enjoining only subsection (a) have merit. The mandate from the opinion states that the full statute violates the First Amendment. *Jr. Sports Mags.*, 80 F.4th at 1121. And the district court appears to treat the panel's opinion as if it were ignorant of circuit and Supreme Court precedent.

In *Brockett v. Spokane Arcades*, 472 U.S. 491 (1985), the Supreme Court reviewed a Ninth Circuit opinion holding that an entire statute was null and void on First Amendment grounds. The Supreme Court reversed for a redetermination of exactly which provisions or sub-sections of the statute were unconstitutional. *Id.* at 507. But California couldn't be troubled to petition for certiorari to the Supreme Court, and its petition for en banc review was denied. Barring those paths, a district court that had been reversed and ordered to enter a preliminary injunction—against the entire statute—lacks the power to narrow the mandate issued by the Court of Appeals.

Moreover, it must be presumed that this panel knew of the rule generated by *Brockett*—that a remedy may not extend the invalidation of a statute further than necessary to dispose of the case before it. So how can a district court, commanded to enter a preliminary injunction in accordance with the panel's opinion, decide, at the urging of the losing appellee, to limit the holding of a published opinion? If the argument panel harbored any concern about judicial overreach, it well understood how to limit their own ruling as shown by invoking the doctrine of constitutional avoidance to reserve judgment on Appellants' (now dormant) equal protection and freedom of association claims. *See Jr. Sports Mags.*, 80 F.4th at 1120, n.3.

So which is more plausible? That the panel made a conscious decision to enjoin the entirety of section 22949.80[8] or that three circuit judges (and any judge of this Court considering whether to vote to rehear the case en banc) ignored Supreme Court precedent and engaged in the judicial anarchy in the order below that conflicts with this Court's precedent, the law of the case, and the rule of mandate?

### D. Even If This Court Reconsiders Subsection (b) in Isolation, It Is Still "Likely Unconstitutional"

Even though the original panel already adjudicated the likely unconstitutionality of section 22949.80 in its entirety, Appellants here, in an effort at thoroughness, address whether subsection (b) is itself "likely unconstitutional" when applying the law of the case to subsection (b). Since this Court already found that section 22949.80 is subject to commercial speech analysis, it follows that "*Central Hudson*'s intermediate scrutiny applies" with equal force to subsection (b). *Jr. Sports Mags.*, 80 F.4th at 1115.

At the first step of that analysis, there can be no serious dispute that section 22949.80 "facially regulates speech whose content concerns lawful activities and is not misleading." *Id.* at 1117. The only question, then, becomes whether subsection (b) itself restricts the speech that this Court already held is protected under the First Amendment—i.e., marketing and advertising of firearm-related products directed to

---

[8] Another mystery that is not fully addressed by the district court or even suggested by California: Why not err on the side of the First Amendment and the original opinion's express language, that the entire statute is enjoined? Thus forcing the State to decide whether another appeal of a preliminary injunction is really necessary at this early stage of the case. Appellants certainly cannot risk being sued for $25,000 per violation for using their own mailing lists while this case is pending.

minors. Since it does, and since *Junior Sports* disposes of the remaining issues, subsection (b) is itself "likely unconstitutional." *Id.* at 1121.

### 1. Subsection (b) regulates commercial speech.

Subsection (b) plainly restricts commercial speech in furtherance of the same illicit state interests as the statute's other subsections. The State's (mis)characterization of subsection (b) as no more than a "privacy provision" that does not "regulate any advertising or similar types of communications," conflicts with both the statute's plain text and its legislative history. Defendant's Limited Opposition to Motion to Enforce the Mandate at 1-2, *Jr. Sports Mags.*, 80 F.4th 1109 (C.D. Cal. May 20, 2024), ECF No. 62. Far from simply safeguarding the personal information of minors, subsection (b) acts as a ban on marketing lawful firearm-related products to them—just like the rest of the "likely unconstitutional" law does. It cannot be segregated from the other provisions of section 22949.80 and spared from judicial scrutiny under *Central Hudson*.

"Effective speech has two components: a speaker and an audience. A restriction on either of these components is a restriction on speech." *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) (citing *Va. State Bd. of Pharmacy v. Va. Citizens Council, Inc.*, 425 U.S. 748, 756-57 (1976); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). Laws restricting the use or disclosure of personal information for marketing and advertising purposes restrict commercial speech and thus warrants *Central Hudson* scrutiny. *Id.* at 1232-33 & n.4 (holding that use of customer personal information to facilitate marketing to customers constitutes commercial speech); 17 FCC Rcd. 14860 (adopting the approach taken by the Tenth Circuit in *U.S. West*). *See also Sorenson Commcns. v. FCC*, 567 F.3d 1215, 1225-26 (10th Cir. 2009) (holding that

restriction on the use of customer data restricts commercial speech in violation of the First Amendment); *Verizon Nw. v. Showalter*, 282 F. Supp. 2d 1187 (W.D. Wash. 2003) (holding that a rule requiring customer approval for the use of customer data restricts "protected commercial speech").

Subsection (b) prevents "firearm industry members" (and *only* "firearm industry members") from compiling, using, or disclosing minors' contact information if they intend to market or advertise products that minors can lawfully possess and use. Again, subsection (b) provides:

> [A] firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, *shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile*, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is *for the purpose of marketing or advertising to that minor any firearm-related product*.

(Emphasis added.)

The provision bears all the indicia of a speech restriction. It facially regulates speech in the form of the "use" or "disclosure" of personal information "*for the purpose of marketing or advertising* to that minor any firearm-related product." Cal. Bus. & Prof. § 22949.80 (b) (emphasis added). It applies to only a specific category of speakers— "firearm industry member[s]" that "publish material directed to minors" in California. *Id.* And it restricts those speakers from "using" or "disclosing" personal information to market or advertise firearm-related products to young people. *Id.* In that way, subsection (b) bans the very same speech that this Court already held is constitutionally protected. *See Jr. Sports Mags.*, 80 F.4th at 1113, 1121. That the ban aligns with the law's stated legislative intent to "further restrict the marketing and

advertising of firearms to minors" underscores Appellants' argument. Assemb. B. 2571, 2021-2022 Reg. Sess., § 1(a)-(b) (Cal. 2022).[9]

There is no dispute that *Junior Shooters* magazine includes "marketing" and "advertising" of "firearm-related product[s]," as those terms are defined by section 22949.80, triggering liability under subsection (b). *See Jr. Sports Mags.*, 80 F.4th at 1113 (citing as an example "an ad about hunting rifles in Junior Sports Magazines' *Junior Shooters*"). Nonsensically, subsection (b) prohibits Junior Sports Magazines from maintaining a mailing list of its own youth subscribers because it "uses" that personal information for the "purpose of marketing or advertising" firearm-related products to them. Even worse, it provides no opt-in mechanism for youth shooters who expressly want—and even pay—to hear the message of "firearm industry members,' like Junior Sports Magazines and its advertisers. Likewise, subsection (b) prohibits Appellants from disclosing personal information to third parties for commercial purposes. These are classic restrictions of commercial speech.

### 2. As this Court already held, subsection (b) fails *Central Hudson*

In reversing the denial of Appellants' first motion for preliminary injunction, this Court made all the findings necessary to grant the relief Appellants sought in their second motion. *See Jr. Sports Mags.*, 80 F.4th at 1117-21. Those findings were binding on the district court and are also now binding on this Court in its re-review of the case under the "rule of mandate" and the "law of the case" doctrine. *Quern v. Jordan*,

---

[9] Notably, the bill does not speak of any intent to protect minor privacy and shield them from misuse of their personal information. It speaks only of shielding them from accessing constitutionally protected firearm-related marketing.

440 U.S. 332, 347 n. 18 (1979) (rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (under the "law of the case," a court may not "reconsider[] an issue that has already been decided by the same court, or a higher court in the identical case").

Since subsection (b) restricts commercial speech, and because this Court already rejected the State's claim that its purported public safety interests justified restricting that speech, *Jr. Sports Mags.*, 80 F.4th at 1117-20, there can be no other outcome here. Subsection (b)—just like the rest of section 22949.80—is "likely unconstitutional" and Appellants are entitled to preliminary relief. The "law of the case" mandates this result.

### 3. Subsection (b) also violates freedom of association.

The parties—and the district court—were foreclosed from relitigating the Appellants' freedom of association claim addressed in the first appeal because this Court had invoked the doctrine of constitutional avoidance noting that full relief could be granted on the commercial speech claim standing alone. *Jr. Sports Mags.*, 80 F.4th at 1120, n.3. That obstacle does not present itself in this second appeal if (and only if) this panel is to reconsider subsection (b) in isolation. Indeed, Judge VanDyke's concurring opinion addresses not only the obvious viewpoint discrimination codified by section 22949.80, but that concurrence points out that California intends to punish that viewpoint of "favorable views about firearms" as a pretextual threat to public safety if any targeted speaker or publisher engages in the

27

normal business practice of keeping and using customer, member, and subscriber lists. *Id.* at 1121-27 (VanDyke, J., concurring).

The First Amendment protects not only the right to free speech but also the right to freely associate. U.S. Const., amend. I. The freedom to associate often merges with the right to free expression because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP*, 357 U.S. at 462. "Governmental action which may have the effect of curtailing" this right "is subject to the *closest* scrutiny." *Id.* at 461-62.

For the same reasons section 22949.80(b) offends the First Amendment right to (commercial) speech, it also offends the freedom of association by prohibiting Appellants from compiling, using, and distributing their own mailing and subscriber lists of adults and minors who might be interested in their products and services— solely because the subject matter is "firearms" and "firearm-related products" that might appear "attractive to minors." *Id.*

In *NAACP v. Patterson*, the Supreme Court noted: "It is beyond debate that freedom to engage in association for the advance of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925); *Palko v. Connecticut*, 302 U.S. 319, 324 (1937); *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Staub v. City of Baxley*, 355 U.S. 313, 321 (1958). Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, ***economic***, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.* 460-

61 (emphasis added). The Supreme Court recently noted that "[i]n such cases, it is 'the application of state power which we are asked to scrutinize.'" *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024) (quoting *NAACP*, 357 U.S. at 463). The State's egregious viewpoint discrimination against Appellants and their relationships with their customers, subscribers, and members, must be subjected to the same strict scrutiny.

## III. THE REMAINING PRELIMINARY INJUNCTION FACTORS SUPPORT RELIEF

### A. Irreparable Harm Is Presumed Because Section 22949.80 Violates Appellants' Rights Under the First Amendment

If this Court concludes that Appellants are likely to succeed on their First Amendment claim, the remaining preliminary injunction factors follow readily. Indeed, this Court has already held that Appellants have "demonstrate[ed] a likelihood of success on the merits of its claim." *Jr. Sports Mags.*, 80 F.4th at 120-21. "[W]hen a party has established a likelihood of success on the merits of a constitutional claim—particularly one involving a fundamental right—the remaining *Winter* factors favor enjoining the likely unconstitutional law." *Id.* (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). In the First Amendment context, such harm is particularly acute. Indeed, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id.* (quoting *Melendres*, 695 F.3d at 1002).

### B. The Balance of Equities and Public Interest Tip Sharply in Appellants' Favor

When the government is a party, the final two factors of the preliminary injunction test—whether the balance of equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court's inquiry thus weighs the interests of the Appellants, the government, and the public, balancing the relative harms to each

should preliminary relief be granted or denied. Applying this test here favors injunctive relief.

This Court has consistently held that when challenging government action that affects the exercise of constitutional rights—especially First Amendment freedoms— "[t]he balance of equities and the public interest … *tip sharply* in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (emphasis added). Certainly, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newsps. LLC v. U.S. Marshalls Serv.*, 977 F.3d 817 (9th Cir. 2020). There is a "'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional [law] … would infringe not only the free expression interests of plaintiffs but also the interests of other people' subjected to the same restrictions." *Id.* (citation omitted). "[E]nforcement of an unconstitutional law," on the other hand, "is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *see also Am. Civ. Libs. Union v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a law that is probably unconstitutional.").

Enjoining section 22949.80, in its entirety, will end the ongoing violation of the First Amendment rights of Appellants and all people seeking to engage in protected expression barred by the state's extraordinarily broad ban, as well as those who seek to hear the messages censored by section 22949.80. What's more, subsection (b) punishes "firearm industry members" (and only them) for having "actual knowledge" that a minor is using or receiving their marketing and advertising material. This is the

essence of what was found to be protected in *Junior Sports*. Since having this "actual knowledge" is concededly the protected activity, subsection (b) becomes a strict liability statute, imposing civil penalties of $25,000 for each violation. Cal. Bus. & Prof. § 22949.80 (e)(1)-(6). This is designed to either bankrupt Appellants or keep them bogged down in endless litigation and discovery, which will inevitably lead to bankruptcy or continued self-censorship.

Indeed, the State is apparently zealous in taking enforcement actions against media companies engaged in allegedly illegal commercial speech to minors. For example, the Attorney General recently announced a *$500,000* settlement in *People v. Tilting Point Media, LLC*, an enforcement action brought by the Attorney General, in cahoots with the Los Angeles City Attorney, against a video game publisher for collecting minor contact information. This joint enforcement action illustrates well the substantial threat Junior Sports Magazines faces if subsection (b) is not enjoined and why any injunction issued must restrain all public officials expressly charged with enforcing this "likely unconstitutional" law.[10] Appellants' interests far outweigh whatever burden the State might allege.

The government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). This Court has already held

---

[10] Press Release, *Attorney General Bonta, L.A. City Attorney Feldstein Soto, Announce $500,000 Settlement with Tilting Point Media for Illegally Collecting and Sharing Children's Data* (June 18, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-la-city-attorney-feldstein-soto-announce-500000 (last accessed July 18, 2024).

31

that section 22949.80 does not advance the State's purported public safety interests in any meaningful or material way. *Jr. Sports Mags.*, 80 F.4th at 1117-19. And even if the State claims that subsection (b) is merely designed to protect the privacy of minors, existing state and federal laws already provide strong protections against the misuse of minors' personal information that the State can rely on while this action proceeds. *See* California Consumer Privacy Act ("CCPA"), Cal. Bus. & Prof. Code § 22581;[11] Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. § 6501.

## IV. THE PRELIMINARY INJUNCTION SHOULD BIND NOT JUST THE ATTORNEY GENERAL AND HIS AGENTS—BUT EVERY PERSON IN ACTIVE CONCERT OR PARTICIPATION WITH HIM

Appellants have requested, among other orders, a preliminary injunction against the enforcement of section 22949.80 directed to the Attorney General, "his employees, agents, successors in office, and all District Attorneys, County Counsel, and City Attorneys holding office in the state of California, as well as their successors in office." The Central District issued a limited order that would enjoin only the Attorney General's office from enforcing subsection (a).

Rule 65 (d)(2) allows district courts to enjoin any of "the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65 (d)(2)(A) or (B)." Fed. R. Civ. P. 65 (d)(2). "The Supreme Court has interpreted this language to allow

---

[11] Though some applications of the CCPA are likely unconstitutional under *Junior Sports Magazines*, at least that law provides prophylactic measures that a website operator can take to avoid liability. Section 22949.80(b) includes no such protections.

injunctions to bind not only defendants but also people 'identified with them in interest, in "privity" with them, represented by them or subject to their control.'" *Cal. Chamber of Com. v. Council for Educ. & Research on Toxics*, 29 F.4th 468, 483 (9th Cir. 2022) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). Otherwise, defendants could "nullify a decree by carrying out prohibited acts through aiders and abettors" simply because they were not named parties. *Regal Knitwear*, 324 U.S. at 14. To avoid that outcome, injunctive relief in this case should bind *all* public officials expressly authorized to enforce section 22949.80—both parties and non-parties. At a minimum, any injunction should enjoin enforcement by the Attorney General, his officers, agents, servants, and employees, and anyone else in active concert or participation with those persons.

It is undisputed that the Attorney General, his successors in office, and their agents are the proper subject of Appellants' requested injunction. He is, after all, a named party. He is sued in his official capacity. And he is expressly tasked with enforcing section 22949.80. The Attorney General is thus appropriately bound by any injunction this Court issues. Fed. R. Civ. P. 65 (d)(2); *Ex parte Young*, 209 U.S. 123, 157 (1908) (holding that the public official to be restrained "must have some connection with the enforcement of the act").

Under Rule 65 (d)(2), this Court may also enjoin enforcement by those subordinate officers over whom the Attorney General has direct supervisory authority. Fed. R. Civ. P. 65(d)(2)(B). This includes all 58 District Attorneys who, along with the Attorney General, are expected to bring civil actions to enforce the law

in the name of the People. Cal. Bus. & Prof. Code § 22949.80 (e)(1). Indeed, under Article V, section 13 of the California Constitution, the Attorney General's powers include "direct supervision over every district attorney and sheriff and over such other law enforcement officer as may be designated by law, in all matters pertaining to the duties of their respective offices."

Finally, an injunction may be issued to enjoin enforcement of section 22949.80 by nonparty County Counsels and City Attorneys even though they are not employed by the State itself. Both Rule 65 and the common-law principles it stands for contemplate two categories of nonparties that an injunction may bind: (1) "nonparties acting in concert with a bound party"; and (2) "nonpart[ies] in 'privity' with an enjoined party." *Nat'l Spiritual Assem. of Ba'hais of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assem. of Ba'hais of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) (citing *Golden State Bottling*, 414 U.S. at 179-80, 94; *Regal Knitwear*, 324 U.S. at 14; *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996)).

This case concerns both types of nonparties. First, all district attorneys, county counsels, and city attorneys in California are statutorily bound to enforce this law, and thus they "act in concert" with the Attorney General under section 22949.80 (e)(1). But the justification for a broader injunction is even more apparent under the privity analysis. "[P]rivity exists when a third party's interests are so intertwined with a named party's interests that it is fair under the circumstances to hold the third party bound by the judgment against the named party." *Saga Int'l, Inc. v. John D. Brush & Co.*, 984 F. Supp. 1283, 1287 (C.D. Cal. 1997) (citing *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980)). Privity can arise if the nonparty's "interests are adequately

34

represented by the named party … or if some other implied or in-fact representation or alignment of interests existed between the parties." *Id.* (citing *ITT Rayonier*, 627 F.2d at 1003). Here, the interests of nonparty District Attorneys, County Counsels, and City Attorneys are identical to the interests of the Attorney General. They are all authorized by the State to bring civil actions under section 22949.80(e)(1). That interest was more than adequately represented by the Attorney General, who (as the chief law officer of the state) has a duty to "see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. 5, § 13.

The district court had, and this Court has, the authority to issue an injunction that binds not only the Attorney General, but his officers, employees, agents, employees, and attorneys, and every person in active concert or participation with him—including those state and local public officials authorized to enforce section 22949.80.

## V. THE DISTRICT COURT FAILED TO FOLLOW THE RULE OF VERTICAL PRECEDENT, THE LAW OF THE CASE, AND THE RULE OF MANDATE; THIS COURT HAS THE POWER TO ISSUE APPROPRIATE CORRECTIVE RELIEF

The full "warp and woof" of the Second Amendment's scope is still being worked out in the courts. And it is still too early to predict whether the Second Amendment will have an analogue to the treatment of the First Amendment rights of minors. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (students do not shed their constitutional rights to freedom of speech at the schoolhouse gate). But this Court made unambiguously clear in *Junior Sports Magazines*, that California violates the First Amendment when it bans truthful advertising and marketing activities about firearm-related products "by firearm industry members," even if such commercial

speech might be "attractive to minors." 80 F.4th 1121. At a minimum, this means that minors have a right to receive marketing information about firearms. "It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom [of speech and press] ... necessarily protects the right to receive ... [information.]'" *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943). *See also First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 783 (1978); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969); *Richmond Newsps. v. Virginia*, 448 U.S. 555, 576 (1980)). And because, here, the commercial speech protected by the First Amendment is about firearms and firearm-related products, this becomes a Second Amendment adjacent case.

This is the elephant in the room. The Ninth Circuit (to put it diplomatically) has a complicated relationship with the Second Amendment. For instance, Justice Thomas, dissenting from a denial of certiorari in *Silvester v. Becerra*, 583 U.S. 1139 (2018), noted that this Court:

> [U]pheld California's 10-day waiting period for firearms based solely on its own "common sense." *Silvester v. Harris*, 843 F. 3d 816, 828 (9th Cir. 2016). It did so without requiring California to submit relevant evidence, without addressing petitioners' arguments to the contrary, and without acknowledging the District Court's factual findings. This deferential analysis was indistinguishable from rational-basis review. And it is symptomatic of the lower courts' general failure to afford the Second Amendment the respect due an enumerated constitutional right.

*Id. at 1140*. Justice Thomas then observed:

> [T]he Ninth Circuit ignored several ordinary principles of appellate review. While rational-basis review "is not subject to courtroom factfinding," *[FCC v.] Beach Communications*, [508 U.S. 307, 315 (1993)] …, intermediate scrutiny is. And here, the District Court presided over a 3-day trial and was

36

> supposed to review those findings for clear error. *See* Fed.
> Rule Civ. Proc. 52(a)(6). Yet the Ninth Circuit barely
> mentioned them. And it never explained why it had the
> "definite and firm conviction" that they were wrong. *United*
> *States v. United States Gypsum Co.*, 333 U. S. 364, 395 (1948).
>
> . . . .
>
> The Ninth Circuit's deviation from ordinary principles of
> law is unfortunate, though not surprising. Its dismissive
> treatment of petitioners' challenge is emblematic of a larger
> trend. As I have previously explained, the lower courts are
> resisting this Court's decisions in *Heller* and *McDonald* and
> are failing to protect the Second Amendment to the same
> extent that they protect other constitutional rights. *See*
> *Friedman v. Highland Park*, 577 U. S. 1039, 1039-1043 (2015)
> (Thomas, J., dissenting from denial of certiorari); *Jackson v.*
> *City and County of San Francisco*, 576 U. S. 1013, 1013-1018
> (2015) (same).

*Id.* at 1147-48.

The Supreme Court recently noted other irregular patterns of adjudication in Second Amendment cases, even calling out cases from this circuit. *United States v. Rahimi,* 219 L. Ed. 2d 351, 376 (2024) (Gorsuch, J. concurring). And judges within this circuit have also noted the trend. *United States v. Duarte*, 2024 U.S. App. LEXIS 17601 (9th Cir. July 17, 2024) (Vandyke, J., dissenting from order granting en banc review). *See also Duncan v. Bonta*, 83 F.4th 803, 807-23 (9th Cir. 2023) (Ikuta, Nelson, Bumatay, & Vandyke, Js., dissenting from order granting stay) (collecting recent Second Amendment cases receiving unusual treatment in the Ninth Circuit).

Nor are these recent cases the only examples of the of the Ninth Circuit's "special relationship" with the Second Amendment:

- In *Fresno Rifle & Pistol Club, Inc., v. Van De Kamp*, 965 F.2d 723 (9th Cir. 1992), the Ninth Circuit's Second Amendment rulings about individual

rights vs. collective rights and incorporation against state action doctrine were all eventually overruled by the Supreme Court.

- The Ninth Circuit repeated its errors from *Fresno* in *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996).

- The Court made the same mistakes again in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002). En banc review was denied with several dissents at 328 F.3d 567 (9th Cir. 2003) and certiorari was denied at 540 U.S. 1046 (2003).

- Justices Thomas and Gorsuch filed dissents to a certiorari denial in *Peruta v. California*, 582 U.S. 943 (2017) after an en banc panel of the Ninth Circuit upheld a ban on public carry of arms. *Peruta v. San Diego Cnty.*, 824 F.3d 919 (9th Cir. 2016). That decision was eventually struck down in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

In each case, the Ninth Circuit was not merely mistaken on a nuanced point of law. It was flat-out wrong when it interpreted the plain text and original public meaning of the Second Amendment.

Judge VanDyke has been keeping a running tally:

> The majority defends our undefeated, 50-0 record against the Second Amendment by pointing out that the states in our circuit simply have "more restrained" gun-control laws than the states in other circuits. While the majority is apparently serious, this claim can't be taken seriously given that our circuit's jurisdiction includes states like California and Hawaii—which have enacted many of the most aggressive gun-control laws in the nation. The majority's failure to comprehend that reality underscores my point that something other than objective and impartial application of the two-part test is driving the outcomes in

our Second Amendment cases.

*Duncan v. Bonta*, 19 F.4th 1087, 1167 n.8 (9th Cir. 2021) (VanDyke, J., dissenting).

Whether this Court's "special relationship" with the Second Amendment is to be classified as an insurgency by revolutionaries or a counterinsurgency against a revolution depends—unironically—on whether one views the Supreme Court's jurisprudence in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010) as revolutionary acts. Indeed, the Supreme Court's opinion in *Bruen* reads more like a remedial lesson on what the Second Amendment has always meant since its ratification in 1791. The *Bruen* court took great pains to point out that it was merely applying (in 2022) what they had already said in 2008 (in *Heller*) and in 2010 (in *McDonald*). *Bruen*, 597 U.S. 1, 18-25.

This raises the question: Is this Court's treatment of the Second Amendment giving license to the district courts to engage in similarly skewed (and wrong) constitutional analysis? Or more innocently, is this Court failing to provide appropriate guidance to the trial courts on cases that even brush up against the Second Amendment? "The tendency to disregard precedents in the decision of cases like the present has become so strong in this court of late as, in my view, to shake confidence in the consistency of decision and leave the courts below on an uncharted sea of doubt and difficulty without any confidence that what was said yesterday will hold good tomorrow,...." *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 113 (1944) (J. Roberts dissenting). In other words, one is left to wonder whether district courts are generating their own brand of chaos as a result of the Ninth Circuit's "complicated" relationship with the Second Amendment (and those adjacent) cases.

39

Vertical judicial precedent means that federal and state courts are absolutely bound by precedents delivered by higher courts within the same jurisdiction. "[U]nless we wish anarchy to prevail with the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam).[12] Vertical precedent can be characterized as the lower court owing obedience to the higher. *See, e.g.*, 18 James W. Moore et al., *Moore's Federal Practice* § 134.02[2], at 134-26.2 n.24 (3d ed. 2015) ("Stare decisis applies to courts owing obedience to [a] rendering court."); *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993) ("The doctrine of stare decisis renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision."). The law of vertical precedent thus means that federal trial courts "cannot for even a moment entertain" a litigant's theory that a higher court erred. *United States v. Pate*, 754 F.3d 550, 554 (8th Cir. 2014). For "'[i]f the [higher court's] decision in [a] case is to be modified, overruled or disregarded, that will have to be done by [that higher court.]'" *Id.* at 554 (quoting *Bakewell v. United States*, 110 F.2d 564, 564 (8th Cir. 1940) (per curiam)).

Similarly, the mandate rule, stated succinctly, dictates that:

> [A] lower court generally is "bound to carry the mandate of
> the upper court into execution and [may] not consider the

---

[12] *See also* Basil Jones, "Stare Decisis" in 26 *The American and English Encyclopedia of Law* 158, 170 (David S. Garland & Lucius P. McGehee eds., 2d ed. 1904) ("An inferior court cannot decide adversely to a decision of a court of last resort and send the case back up to that court again upon the ground that in the former decision of the court of last resort certain points were not sufficiently argued or noticed by the justice delivering the opinion there.").

> questions which the mandate laid at rest." [citation omitted] Because this "mandate rule" is merely a "specific application of the law of the case doctrine," in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993). In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court. *See id.* at 250. Thus, when this court remands for further proceedings, a district court must, except in rare circumstances, "'implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces.'" *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).

*United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993). Neither the district court nor the State have identified any new law, new facts, or rare circumstances that would justify the trial court's violation of the mandate rule. Nothing in the panel opinion suggests that post-appeal relief should be narrower than what Appellants requested in their original motion for injunctive relief.

It does not matter if the trial judge decided to try to slip one by the court to whom she owes obedience or whether she might be earnestly wrestling with a body of law (this Court's Second Amendment and Second Amendment adjacent[13] cases) that has itself become a Byzantine proposition. What matters is that this Court has a chance to clarify the rule of mandate, the law of the case, and vertical precedent by using the facts and law of this case.

---

[13] An en banc panel of the Ninth Circuit reversed the holding of a three-judge panel that would have allowed a challenge to a zoning ordinance outlawing gun stores in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc), *cert. denied*, 584 U.S. 977 (2018). Though the case did raise pure Second Amendment claims, the en banc panel appeared to go out of its way to uphold the government's zoning authority when it came to regulating gun stores.

## CONCLUSION

For these reasons, the district court committed a reversible error (again) in refusing to enter a preliminary injunction enjoining the enforcement of all provisions of California Business & Professions Code section 22949.80 by all public officials expressly tasked with enforcing that law. Appellants ask this Court to reverse the district court's order and remand with specific instructions that the district court enter a preliminary injunction enjoining the enforcement of section 22949.80, *in its entirety*, by the Attorney General's office and all persons in active concert with him, including all district attorneys, county counsels, and city attorneys in California.

Dated: July 30, 2024        MICHEL & ASSOCIATES, P.C.

s/ Anna M. Barvir
Anna M. Barvir
*Counsel for Plaintiffs Junior Sports Magazines, Inc.,*
*Raymond Brown, California Youth Shooting Sports*
*Association, Inc., Redlands California Youth Clay*
*Shooting Sports, Inc., California Rifle & Pistol*
*Association, Incorporated, The CRPA Foundation,*
*and Gun Owners of California, Inc.*

Dated: July 30, 2024        LAW OFFICES OF DONALD KILMER, APC

s/ Donald Kilmer
Donald Kilmer
*Counsel for Plaintiff Second Amendment Foundation*

42

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-4050

I am the attorney or self-represented party.

**This brief contains** 12,063 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Anna M. Barvir **Date** July 30, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2024, an electronic PDF of APPELLANTS' OPENING BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: July 30, 2024                    Respectfully submitted,

                                        MICHEL & ASSOCIATES, P.C.

                                        s/ Anna M. Barvir
                                        _____
                                        Anna M. Barvir
                                        *Counsel for Plaintiffs-Appellants*