Case No. 24-4050

In the United States Court of Appeals
for the Ninth Circuit

---

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants*,

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

---

**APPELLANTS' REPLY TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION PENDING APPEAL**

---

| | |
|---|---|
| C.D. Michel | Donald Kilmer |
| Anna M. Barvir | Law Offices of Donald Kilmer, APC |
| MICHEL & ASSOCIATES, P.C. | 14085 Silver Ridge Rd. |
| 180 E. Ocean Blvd., Suite 200 | Caldwell, Idaho 83607 |
| Long Beach, CA 90802 | (408) 264-8489 |
| (562) 216-4444 | don@dklawoffice.com |
| cmichel@michellawyers.com | |

*Attorneys for Plaintiffs-Appellants*

August 2, 2024

# ARGUMENT

## I. PLAINTIFFS HAVE COMPLIED WITH THE REQUIREMENTS OF RULE 8(A)(2)(A)

The State's argument that Appellants failed to seek the preliminary relief they now request from this Court is factually wrong, borderline frivolous, and, in the final analysis, incomprehensible. Appellants address why they meet the requirements for Rule 8 relief in Part I of their motion and again in the supporting declaration of Anna Barvir. Mot. 5; Barvir Decl. ¶¶ 2-9. In short, the district court had more than ample opportunity to grant Appellants the relief they require. Mot. 5. Even if they had not expressly requested exactly the same relief from the district court that they seek here, Appellants have at the very least shown that it would have been "impracticable" to ask the district court judge—for at least the fourth time—to preliminarily enjoin all of Section 22949.80. Filing yet another motion for identical relief to await yet another denial from that court while Appellants risk devastating civil penalties for engaging in protected First Amendment conduct would be both impractical and foolish.

The challenged order begins: "Presently before the Court is plaintiffs' motion to enforce the Ninth Circuit's mandate and enter preliminary injunction." Barvir Decl., Ex. A at 1. The district court then states that "plaintiffs filed the instant motion to enforce the Ninth Circuit's mandate and issue a preliminary injunction." *Id.* at 2. And then the district court itself acknowledges that an "immediate[] appeal" of its decision by Plaintiff-Appellants was likely. *Id.* at 10, n.1. "I give up. Now I realize fully what Mark Twain meant when he said, 'The more you explain it, the more I don't understand it.'" *SEC v. Chenery Corp.*, 332 U.S. 194, 214 (1947) (Jackson, J., dissenting). Is the State seriously arguing that Appellants should have filed *another* motion for a

preliminary injunction pending appeal or a completely nonsensical motion for stay to meet the requirements of Rule 8? This is a frivolous and incomprehensible argument. It has no merit and (disappointingly) sets the tone for the rest of the State's opposition—noise without signal.

## II. SUBDIVISION (B) IS UNCONSTITUTIONAL UNDER THIS COURT'S DECISION IN JUNIOR SPORTS MAGAZINES

The State's merits arguments are no more coherent than their claim that Appellants have failed to satisfy the requirements of Rule 8.

First, the State argues that this Court did not know what it was doing when it explicitly held "that § 22949.80 is likely unconstitutional under the First Amendment, and we thus REVERSE the district court's denial of a preliminary injunction and REMAND for further proceedings consistent with this opinion." *Jr. Sports Mags., Inc., v. Bonta*, 80 F.4th 1109, 1121 (9th Cir. 2023). Somehow this translates into, "Well, they really meant to only enjoin subjection (a)." The only rationale for the State's argument is that a text search reveals that the Court did not directly cite subsection (b) in the opinion. From that, the State extrapolates that since subsection (b) was perhaps overlooked, it can apply the Simple Simon rule and argue that subsection (b) must still be constitutional because "magic words" were not used. That is not how the law works. This Court's opinions are not coded messages that require "Talmudic scholars nor skill[s] in the use of Urim and Thummin to construe" them. *Herrgott v. U.S. Dist. Ct. N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729 (9th Cir. 2002).

This Court published a comprehensive opinion, applying the commercial speech doctrine under *Central Hudson Gas & Electric Corp. v. Public Services Comm'n*, 447 U.S. 557 (1980), to analyze a law that plausibly empowered the government to engage

2

in viewpoint discrimination—perhaps the most serious form of censorship prohibited by our First Amendment. *Jr Sports Mags.*, 80 F. 4th at 1121-27, n. 1. (VanDyke, J., concurring). No judge of this Court took issue with that opinion enough to even call for a vote for en banc rehearing.

Vertical judicial precedent means that federal and state courts are absolutely bound by precedents delivered by higher courts within the same jurisdiction. "[U]nless we wish anarchy to prevail with the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam). Indeed, "[a]n inferior court cannot decide adversely to a decision of a court of last resort and *send the case back up to that court again upon the ground that in the former decision of the court of last resort certain points were not sufficiently argued or noticed by the justice delivering the opinion there.*" Basil Jones, "Stare Decisis" in 26 *The American and English Encyclopedia of Law* 158, 170 (David S. Garland & Lucius P. McGehee eds., 2d ed. 1904) (emphasis added). Appellants *do not* concede that this Court's earlier opinion was ambiguous or unclear in any way. But even if it were, the Attorney General is wrong if he believes these rules for interpreting the law do not apply to his office.

The State must know that vertical precedent requires the lower court to obey the higher. *See, e.g.*, 18 James W. Moore et al., *Moore's Federal Practice* § 134.02[2], at 134-26.2 n.24 (3d ed. 2015) ("Stare decisis applies to courts owing obedience to [a] rendering court."); *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993) ("The doctrine of stare decisis renders the ruling of *law* in a case binding in future cases before the same court or other courts owing obedience to the decision."). The law of

3

vertical precedent thus means that federal trial courts "cannot for even a moment entertain" a litigant's theory that a higher court erred. *United States v. Pate*, 754 F.3d 550, 554 (8th Cir. 2014). For "'[i]f the [higher court's] decision in [a] case is to be modified, overruled or disregarded, that will have to be done by [that higher court.]'" *Id.* at 554 (quoting *Bakewell v. United States*, 110 F.2d 564, 564 (8th Cir. 1940) (per curiam)). After failing to secure en banc review, the State's remaining remedy was to petition for certiorari with the Supreme Court. It opted not to do so.

Neither the district court nor the State have identified any new law or fact or rare circumstances that would justify the district court's defiance of vertical precedent and the mandate rule. Nothing in the panel opinion suggests that post-appeal relief should be narrower than what Appellants requested in their original motion for injunctive relief or what was so unambiguously stated in this Court's opinion "that § 22949.80 is likely unconstitutional." *Jr. Sports Mags.*, 80 F.4th at 1121.

Finally, the claim that California has not had a fair opportunity to brief why subsection (b) should be severed under subsection (f), is put to rest by the Easter Egg[1] the district court placed in its first opinion. In a footnote, the district court noted: "AB 2571 contains two privacy-related provisions, Subsections 22949.80(b) and 22949.80(d). Neither of those have been challenged by plaintiffs in their complaint or briefing on this motion, although they are evidently encompassed by plaintiffs' request

---

[1] One does wonder if this was the lifeline that Appellees latched onto after they were denied en banc review, after the case was remanded, after an order was already entered in the companion *Safari Club* case, but before they filed their "partial" opposition to the mandate motion in the district court in this case. *See* Barvir Decl. ¶¶ 2-9 (explaining the sequence of the State's "only subsection (a)" argument genesis and timeline).

to 'enjoin the enforcement of section 22949.80.'" 2-ER-0013.[2] Does this mean everyone, except the Attorney General, who has laid eyes on this case knew that the entirety of section 22949.80 was at issue because that is exactly how Appellants framed the case from day one? Or is the Attorney General trying to gaslight his way out of an adverse decision?

The State's own admissions on this point are already cataloged in Appellants' motion. Mot. 8-10. Two examples are sufficient for this reply. Both are from the State's Petition for Rehearing En Banc, acknowledging that "[t]he law at issue here is Section 22949.80." Appellees' Petition for Rehearing En Banc at 3, *Jr. Sports Mags.*, 80 F.4th 1109 (9th Cir. Nov. 13, 2023), ECF No. 49. The petition then acknowledges that Appellants "moved for a preliminary injunction against Section 22949.80 in its entirety." *Id.* at 6. Even conceding this, the State made no attempt to invoke the statute's severance clause or suggest that "only subsection (a)" is at issue.

The final fabulism of the State's argument is that Appellants are raising, for the first time in this appeal, any argument that subsection (b) is itself unconstitutional. Appellants' strongest argument remains that this Court meant what is said in its published opinion, and any correction or modification would have to be made by an en banc panel or the Supreme Court. Even so, Appellants did raise the issue of subsection (b)'s stand-alone unconstitutionality under the binding *Junior Sports* precedent below. From Appellants' motion:

> The Ninth Circuit has published an opinion (that the entire Ninth Circuit declined to rehear or otherwise modify) which found that directly marketing firearms to minors (as long as such marketing otherwise complies with

---

[2] The Excerpts of Record was filed on July 30, 2024. ECF No. 9.2.

> state and federal law) is protected commercial speech under the First Amendment. It strains credulity to think that the rest of section 22949.80 is still somehow valid.
>
> First, subsection (b) is wholly reliant on the marketing activities of firearm industry members that the Ninth Circuit has found to be protected speech. And subsection (b) merely prohibits the "use, disclos[ur]e, and compil[ation], of personal information … of [a] minor … for the purpose of marketing or advertising to ... minor[s] any firearm-related product." If marketing firearm products to minors is protected speech, how is the use and maintenance of mailing lists to conduct such marketing activities not also protected conduct?
>
> As for the remaining subsections, if subsections (a) and (b) are unenforceable, none of them can survive in any functional way. Subsection (c) simply sets forth definitions, several of which merely repeat definitions from other statutes. The other definitions are now potentially vague and ambiguous because the law using those code-specific definitions has been found unconstitutional. Subsection (d) contradicts subsection (b) and suffers from the same constitutional infirmities as (b).

Plaintiffs' Motion to Enforce Mandate 9-10, *Jr. Sports. Mags.*, No. 22-cv-04663 (C.D. Cal. May 2, 2024), ECF No. 59-1.

This is the same argument Appellants make on appeal. It may be more fleshed out in the appellate filings than it was below, but it is simply false to claim that this side issue—whether subsection (b) is independently unconstitutional—was not raised by Appellants below.

### III.  THE EQUITABLE FACTORS FAVOR PRELIMINARY INJUNCTION

Appellants' motion clearly establishes that the remaining factors for equitable relief tip sharply in their favor. Mot. 16-19. The State does not directly address those arguments. Instead, the State makes a bad-faith argument that it has not had a fair chance to argue the constitutionality of subsection (b). The argument straddles the State's second and third arguments about the constitutionality of subsection (b), and Appellants addressed those arguments above.

But the quip at the end of the State's argument about the "equities" is a bit cheeky. The State complains that "[i]nstead of pursuing that direct route [of moving to enjoin subsection (b)], Plaintiffs instead chose to file a motion to enforce this Court's mandate, and then appeal the resulting order. This is a longer and more circuitous route to relief than simply filing a new motion in the district court to enjoin subdivision (b)." Opp'n 19.

First, Appellants' path to relief is not "longer or more circuitous" than filing the nonsensical motion the State apparently thinks they should have filed. This Court *already* held that section 22949.80, *including subsection (b)*, was likely unconstitutional and should be enjoined. Appellants thus had no reason to move to enjoin subsection (b) alone. After the trial court enjoined only subsection (a) in defiance of the mandate, Appellants appealed (as the district court predicted they would) because the lower court remains unwilling to grant the relief this Court explicitly held they were entitled to. Further, since the matter has not been stayed below, the path the parties are on is arguably *faster* because the parties may continue litigating to final judgment while this Court enters a temporary injunction and this interlocutory appeal proceeds—perhaps with the guidance that additional decisions from this Court may provide.

What's more, the mirror image of the proposition could be tendered to the State. Why did it refuse to even consider the most direct route to resolving the issue and simply enter into a stipulation temporarily enjoining all of section 22949.80, reserving the right to contest the constitutionality of subsection (b) at trial? After all, this is only a preliminary injunction, and that was all that Appellants obtained from this Court. The only downside for the State would be that all of section 22949.80 is

7

temporarily enjoined pending a final judgment. On the other hand, Appellants remain at risk of being sued into bankruptcy just for "maintaining" and "using" their own mailing lists for their intended purposes while this case is pending—with civil penalties of $25,000 per violation.[3]

But what makes the argument one of bad faith, is that the State, with all the resources a wealthy state can muster, did not make this "only subsection (a)" argument to this panel (in their briefs or oral argument). They did not make this argument in their en banc petition. And they did not file a petition for certiorari in the Supreme Court. It either overlooked the argument—because it *knew* the entire statute was at issue—or it sandbagged Appellants waiting to raise the issue until it returned to a known friendly district court. Either way, this is not the usual collegial practice of federal civil rights litigation.

## IV. INJUNCTION SHOULD APPLY TO THE STATE-ACTORS IN THE STATUTE

The State's final argument that any injunction should only extend to the "defendant, his officers, agents, servants, employees, and attorneys, and other persons in active concert with them" while not frivolous, is still flawed. The Attorney General is the "chief law officer of the State." It is his duty "to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct

---

[3] Appellants cannot even avail themselves of the protection of California's anti-SLAPP statute because the law does not protect those engaged in commerce. Cal. Code Civ. Proc. §§ 425.16, 425.17. Making Justice Thomas's observation even more prescient on these facts "that there is no 'philosophical or historical basis for asserting that "commercial" speech is of "lower value" than "noncommercial" speech.' Indeed, I doubt whether it is even possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard Tobacco v. Reilly*, 533 U.S. 525, 575 (2001) (Thomas, J., concurring).

8

supervision over every district attorney….” Cal Const, Art. V § 13. At a minimum, any injunction must expressly include the State's district attorneys.

Appellants will not repeat their arguments for enjoining city attorneys and county counsels here, as Appellees made no substantive arguments in response, except to rely on a "broad discretion of the trial court" argument. But that does not help Appellants if some rogue city attorney or county counsel decides to roll the dice and launch a lawfare project that will either keep Appellants tied up in expensive litigation or require them to forgo their First Amendment rights in order to avoid the risk of bankruptcy in $25,000 increments. As for the assertion that no government official has yet threatened to enforce subsection (b), Appellants again direct this Court's attention to the joint lawsuit filed by the Los Angeles City Attorney and the Attorney General against game publisher Tilting Point Media, LLC, for collecting minor contact information.[4] This means one can wager that there is an active program to conduct this kind of lawfare against other businesses that operate in California and cater to the state's young people. And you'd probably win that bet. Appellants cannot afford that gamble.

But the more sublime argument is to remember that the Attorney General represents the State of California. California's legislature passed this law authorizing "the Attorney General or … any district attorney, county counsel, or city attorney in any court of competent jurisdiction" to enforce its marketing ban. Cal. Bus. & Prof.

---

[4] Press Release, *Attorney General Bonta, L.A. City Attorney Feldstein Soto, Announce $500,000 Settlement with Tilting Point Media for Illegally Collecting and Sharing Children's Data* (June 18, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-la-city-attorney-feldstein-soto-announce-500000 (last accessed Aug. 2, 2024).

9

Code § 22949.80(e)(1). The legislature could have limited enforcement to only the Attorney General's office, but it did not. When you buy the tree, you get the bark. Any injunction should enjoin the state actors called out by name in the statute.

## CONCLUSION

Right now, the only legally enforceable order protecting Appellants from the First Amendment harms acknowledged in this Court's opinion—that all of section 22949.80 is likely unconstitutional—is the order in the *Safari Club* case that is currently under reconsideration in the Eastern District. As long as that order remains in effect, Appellants are ostensibly protected. If the trial judge modifies his order in accordance with the State's wishes, then they are faced with potentially ruinous lawfare. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). There is an urgent need for speedy action to protect Appellants' rights. For these reasons, the Court should grant Appellants' Motion for Preliminary Injunction Pending Appeal.

Dated: August 2, 2024　　　　　　　MICHEL & ASSOCIATES, P.C.

　　　　　　　　　　　　　　　　　s/ Anna M. Barvir
　　　　　　　　　　　　　　　　　Anna M. Barvir
　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Junior Sports Magazines, Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.*

Dated: August 2, 2024　　　　　　　LAW OFFICES OF DONALD KILMER, APC

　　　　　　　　　　　　　　　　　s/ Donald Kilmer
　　　　　　　　　　　　　　　　　Donald Kilmer
　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Second Amendment Foundation*

10

## CERTIFICATE OF SERVICE

  I hereby certify that on August 2, 2024, an electronic PDF of APPELLANTS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: August 2, 2024        Respectfully submitted,

               **MICHEL & ASSOCIATES, P.C.**

               s/ Anna M. Barvir
               Anna M. Barvir
               *Counsel for Plaintiffs-Appellants*