Case No. 24-4050

In the United States Court of Appeals
for the Ninth Circuit

———————————————

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants*,

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

———————————————

**APPELLANTS' REPLY BRIEF**

———————————————

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

September 17, 2024

# TABLE OF CONTENTS

**Page**

Table of Contents................................................................................................i

Table of Authorities ..........................................................................................ii

Introduction .........................................................................................................1

Argument ..............................................................................................................2

I.    The Entirety of 22949.80 Has Always Been at Issue; The State's Post-hoc Claim That Appellants Challenged Only Subsection (a) Contradicts the Record ........................................................................................................................2

II.   The Entirety of Section 22949.80 Is "Likely Unconstitutional" ...........................9

       A.    Under the "Predicate Act Canon" and this Court's Decision in *Junior Sports*, the Collection and Use of Minor Contact Information Necessary to Disseminate Appellants' Message Is Protected Commercial Speech; The State's Ban on That Speech Violates the First Amendment ............12

       B.    The Doctrine of Severability Cannot Save Any Part of AB 2751 ...........16

III.   The Preliminary Injunction Should Apply to Every State Actor Explicitly Charged with Enforcing AB 2571 ..........................................................................22

Conclusion ...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cal. Redevel. Ass'n v. Matosantos,*
   53 Cal. 4th 231 (2011) ...................................................................17, 18, 20

*Barlow v. Davis,*
   72 Cal.App.4th 1258, (1999) ...................................................................18

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ...................................................................13

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ...................................................................13

*Garcia v. City of Los Angeles,*
   11 F.4th 1113 (9th Cir. 2021) ................................................... 17, 18

*Grosjean v. Am. Press Co.,*
   297 U.S. 233 (1936) ...................................................................12

*Harris v. Bd. of Supervisors, Los Angeles Cnty.,*
   366 F.3d 754 (9th Cir. 2004) ................................................... 17, 23

*Hill v. Colorado,*
   530 U.S. 703 (2000) ...................................................................12

*Jackson v. City & Cnty. of San Francisco,*
   746 F.3d 953 (9th Cir. 2014) ...................................................................13

*Jr. Sports Mags. v. Bonta,*
   80 F.4th 1109 (9th Cir. 2023) ...................................................................*passim*

*Luis v. United States,*
   578 U.S. 5 (2016) ...................................................................12, 13, 14

*Metromedia, Inc. v. City of San Diego,*
   32 Cal. 3d 180 (1982) ...................................................................18

*Minneapolis Star & Trib. Co. v. Minn. Com'r of Revenue*,
    460 U.S. 575 (1983) ................................................................. 12, 14

*Nat'l Ass'n for Advancement of Colored People v. Button*,
    371 U.S. 415 (1963) ..................................................................14

*NetChoice, LLC v. Bonta*,
    No. 23-2969, 2024 WL 3838423 (9th Cir. Aug. 16, 2024) .........................15

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................13

*Platt v. Moore*,
    15 F.4th 895 (9th Cir. 2021) .........................................................17

*Quern v. Jordan*,
    440 U.S. 332 (1979) ..................................................................15

*Santa Barbara Sch. Dist. v. Superior Ct.*,
    13 Cal. 3d 315 (1975) ............................................................ 17, 18

*Sibbald v. United States*,
    37 U.S. 488 (1838) ...................................................................10

*Thomas v. Bible*,
    983 F.2d 152 (9th Cir. 1993) ........................................................15

*United States v. Bell*,
    988 F.2d 247 (1st Cir. 1993) .........................................................15

*United States v. Bell*,
    5 F.3d 64 (4th Cir. 1993) ............................................................15

*United States v. Miller*,
    307 U.S. 174 (1939) ...................................................................7

**Statutes**

Children's Online Privacy Protection Act of 1998,
    15 U.S.C. § 6501 ......................................................................15

Privacy Rights for Minors in a Digital World Act,
    Cal. Bus. & Prof. Code §§ 22580, et seq. ..........................................15

Cal. Bus. & Prof. Code § 22949.80 ..................................................................*passim*

Cal. Civ. Proc. Code § 425.16 ......................................................................23

Cal. Civ. Proc. Code § 425.17 ......................................................................23

California Consumer Privacy Act,
    Cal. Civil Code §§ 1798.100, et seq. ......................................................15

California Age-Appropriate Design Code Act (CAADCA),
    Cal. Civil Code § 11798.99.40 ................................................................15

**Other Authorities**

1 Herbert L. Osgood, *The American Colonies in the 17th Century* 499 (1904) ..................13

2 Norman J. Singer,
    *Statutes and Statutory Construction* § 44:8, at 585-90 (7th ed. 2009) ................................16

Antonin Scalia & Bryan Garner,
    *Reading Law: The Interpretation of Legal Texts* 192 (2012) ....................................12

Appellants' Response to Appellee's Petition for Rehearing En Banc,
    *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Dec. 22, 2023)
    (No. 22-56090), ECF No. 51 ..........................................................................8

Appellees' Answering Brief,
    *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Jan. 27, 2023)
    (No. 22-56090), ECF No. 20 ..........................................................................7

Appellees' Petition for Rehearing En Banc,
    *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Nov. 13, 2023)
    (No. 22-56090), ECF No. 49 ..........................................................................8

Assemb. B. 2571, Ch. 77 § 1 (Cal. 2022)...........................................................*passim*

Defendant-Appellee's Answering Brief,
    *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (Jan. 27, 2023)
    (No. 22-56090), ECF. No. 20..........................................................................19

Thomas M. Cooley,
    *General Principles of Constitutional Law* 271 (2d ed. 1891) ................................13

## INTRODUCTION

This appeal arises from the district court's refusal to fully enforce the Ninth Circuit's previous holding that California Business & Professions Code section 22949.80 is likely unconstitutional under the First Amendment. Despite this Court's clear ruling, the district court enjoined only subsection (a) of the law, leaving the remaining provisions untouched. Now, the State is attempting to manipulate the record in this case to avoid an adverse decision. Its Answering Brief perpetuates a demonstrably false narrative that—much to the surprise of Appellants—they had never challenged section 22949.80 in the first place, and their claims were limited to subsection (a). Appellants thus provide a comprehensive chart conclusively showing what the record really reflects—that both the parties and the courts have consistently recognized that the entirety of section 22949.80 has always been at issue.

To illustrate the absurdity of the State's position, consider this analogy: If someone argues that "the Bill of Rights is essential to preserving the liberties of the American people," it is not a valid counterargument to say that the government can still impose cruel and unusual punishments because the use of the shorthand phrase "Bill of Rights" did not explicitly reference the Eighth Amendment. That is pure sophistry. Yet this is exactly the type of argument the district court accepted. This Court should reject it.

Part II of this brief explains that the entirety of section 22949.80 is likely unconstitutional, as this Court has already held. But in addition to this Court's previous ruling, the predicate act canon and the doctrine of severability support the conclusion that the statute, as a whole, cannot stand. The Court should reaffirm its

original decision, declaring that AB 2571 *in its entirety* likely violates the First Amendment and cannot be salvaged by enforcing only parts of it. The district court's attempt to enjoin only subsection (a) was an error, as the law's provisions are too interdependent to be severed and enforced piecemeal.

## ARGUMENT

### I. THE ENTIRETY OF 22949.80 HAS ALWAYS BEEN AT ISSUE; THE STATE'S POST-HOC CLAIM THAT APPELLANTS CHALLENGED ONLY SUBSECTION (A) CONTRADICTS THE RECORD

In the Defendant's Limited Opposition to Motion to Enforce Mandate and Issue Preliminary Injunction filed in the district court, the State made the verifiably false claim that "since the filing of Plaintiffs' complaint, the parties and courts have often used references to 'section 22949.80' or 'AB 2571' as a shorthand for the advertising regulations in subdivision (a)." SER-024. It echoes this incredible claim in its filings on appeal. *See* Answering Br. 6. By trying to manipulate the record and the arguments it has made, the State is trying to gaslight its way out of an adverse decision by making the fantastical claim that this Court only meant to enjoin subsection (a). Since the State apparently wants to engage in a word count game to obscure the record, it is better to let the facts speak for themselves.

The table below documents the result of searches of the filings from the first round of litigation for the terms "AB 2571," "22949.80," without subsections,

"22949.80(a)," "22949.80(b)," "22949.80(d)," "22949.80(f)," all without further subdivisions, and the terms "sever," "severable," and "severability."[1]

| Results of Text Searches<br>District Court Filings – Round One | | | | | | |
|---|---|---|---|---|---|---|
| | AB 2571 | 22949.80<br>w/o subsections | 22949.80(a)<br>w/o subdivisions | 22949.80(b)<br>w/o subdivisions | 22949.80(d)<br>w/o subdivisions | 22949.80(f)<br>w/o subdivisions | Sever, Severable,<br>Severability |
| Complaint, 1-ER-233-270 | 95 | 5 | 0 | 0 | 0 | 0 | 0 |
| Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, SER-111-141 | 74 | 3 | 0 | 0 | 0 | 0 | 0 |
| Request for Judicial Notice in Support of Motion For Preliminary Injunction, FER-50-54 | 8 | 0 | 0 | 0 | 0 | 0 | 0 |
| Proposed Order Granting Motion for Preliminary Injunction, FER-48-49 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Defendant's Opposition to Motion for Preliminary Injunction, SER-83-110 | 55 | 2 | 0 | 0 | 0 | 0 | 0 |
| Reply to Defendant's Opposition to Motion For Preliminary Injunction, SER-54-82 | 91 | 0 | 0 | 0 | 0 | 0 | 0 |

---

[1] Text searches were conducted using Adobe Acrobat™ Pro 2020. Exhibits, declarations, and addendums were excluded from the search.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Plaintiffs' Sur-Reply in Support of Motion for Preliminary Injunction, FER-42-47 | 10 | 0 | 0 | 0 | 0 | 0 | 0 |
| Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Injunction, FER-20-47 | 46 | 0 | 0 | 0 | 0 | 0 | 0 |
| Defendant's Supplemental Brief in Support of Opposition to Motion for Preliminary Injunction, FER-4-19 | 38 | 0 | 0 | 0 | 0 | 0 | 0 |
| Order Denying Motion Preliminary Injunction, 2-ER-209-32 | 131 | 3 | 1 | 1 | 1 | 1 | 1 |
| **Results of Text Searches** **Ninth Circuit Filings – Round One** | | | | | | | |
| Appellants' Opening Brief | 125 | 3 | 0 | 0 | 0 | 0 | 0 |
| Brief of Amicus Curiae in Support of Plaintiffs-Appellants | 26 | 1 | 0 | 0 | 0 | 0 | 0 |
| Appellees' Answering Brief | 99 | 1 | 0 | 0 | 0 | 0 | 0 |
| Appellants' Reply Brief | 76 | 1 | 0 | 0 | 0 | 0 | 0 |
| Opinion | 6 | 24 | 0 | 0 | 0 | 0 | 0 |
| Petition for Rehearing En Banc | 8 | 41 | 0 | 0 | 0 | 0 | 0 |
| Appellants' Response to Petition for Rehearing En Banc | 22 | 2 | 0 | 0 | 0 | 0 | 0[2] |

As the table shows, Appellants referred to "AB 2571" 95 times in the complaint, 3-ER-233-70, and another 230 times in their preliminary injunction papers, SER-54-82, 111-41; FER-20-40, 48-49, 50-54. The State itself refers to "AB

---

[2] These terms appear only in addendums setting out the text of AB 2571.

2571" 93 times in its opposition memoranda. SER-83-110; FER-4-19. And the district court's (overturned) order refers to "AB 2571" a whopping 131 times. 2-ER-158-208. On the other hand, neither the court nor the parties cited discrete subsections with any regularity. In fact, there are almost no references to the various subsections alone.[3] The same disparity was evident in the parties' briefing on appeal. But even more telling than the sheer number of times the parties and the district court referred to "AB 2571" as opposed to any subsection is that, in the overwhelming majority of those times, the context is crystal clear that everyone was using "AB 2571" to refer to the *entirety* of section 22949.80.

From the beginning, Appellants were clear that they were "refer[ring] to the challenged law, California Business & Professions Code section 22949.80, as 'AB 2571.'" 3-ER-246. Their prayer for relief refers to "AB 2571, codified at California Business and Professions Code section 22949.80," without mentioning any subsection in the context of using those terms interchangeably to refer to the entire statute. 3-ER-269. Their preliminary injunction briefing similarly explained that "[t]hroughout th[e] motion," they would "refer to section 22949.80 as AB 2571." SER-117. And their Proposed Order Granting Plaintiffs' Motion for Preliminary Injunction sought to enjoin the enforcement "AB 2571, codified at Business & Professions Code section

---

[3] When they did cite a subsection, it was generally in the context of describing the individual details of the statutory scheme, including statutory definitions applicable to the entire law. For instance, there are several search results for subsection (a), but they are citations to further subdivisions (e.g., subsection (a)(2)) that describe exemptions to the law or provide guidance for its application. They do not reference subsection (a) as a whole and, therefore, do not support the State's claim that both the parties (including Appellants) and the court were using "AB 2571" as shorthand for subsection (a).

22949.80." FER-49. On the other hand, not once did Appellants even suggest they were adopting "AB 2571" as shorthand for any given subsection, including subsection (a). Neither did the State, for that matter.

What's more, when describing the protected activities that "AB 2571" restricts (thereby giving rise to this litigation), Appellants repeatedly referred to conduct that necessarily includes compiling and using minor contact information to market firearm-related products—the very conduct that subsections (b) and (d) regulate. Paragraph 58 of the complaint, for instance, lists the various activities that "AB 2571" restricts, including "[a]ll (or nearly all) aspects of youth hunting and shooting magazines and the websites, social media, and other communications promoting those magazines." 3-ER-249-50 (¶ 58.a; *see also* ¶¶ 58.e, 58.i.). Of course, maintaining and using magazine subscriptions, websites, and social media requires the creation, maintenance, and use of mailing lists and contact information.

Paragraphs 65 through 96 of the complaint similarly describe the specific impacts of AB 2571 on Appellants' free speech activities. 3-ER-251-58. For instance:

- Paragraphs 65 through 68 discuss the broad activities, including the arrangement of marketing and placement of ads—which necessarily includes the means to get those ads to minors via print, U.S. Mail, or email. 3-ER-251.

- Paragraph 69 discusses the institutional Appellants' activities in promoting their memberships and financial support—which necessarily implies compiling (creating) and using membership or mailing lists. 3-ER-252.

6

- Paragraph 70 discusses Junior Sports Magazines' efforts to publish and **distribute** its publication—which necessarily implies the creation and maintenance of mailing lists. 3-ER-252.

- Paragraph 71 discusses how Junior Sports Magazines shares marketing information with its partners and advertisers. 3-ER-252.

- Paragraphs 77 through 96 discuss how the institutional Appellants advertise, market, promote, sponsor, host, and facilitate youth shooting competitions and other firearm-related events that would be attractive to minors—which (again) necessarily implies the use of mailing lists. 3-ER-253-58.

The State, for its part, followed Appellants' protocol of referring to section 22949.80 as "AB 2571" in its own filings in both the district court and on appeal. SER-83-110; FER-4-19; Appellees' Answering Brief 1, *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Jan. 27, 2023) (No. 22-56090), ECF No. 20. But beyond that implied admission that Appellants challenged the entirety of section 22949.80, the State explicitly acknowledged it more than once. Indeed, in the very first sentence of its preliminary injunction opposition, the State argued that "Plaintiffs are not entitled to the  extraordinary remedy of a preliminary injunction barring enforcement of California Business & Professions Code § 22949.80 ("AB 2571" or "§ 22949.80") *in its entirety*." SER-89 (emphasis added). Later, when seeking rehearing of its loss en banc, the State switched to using "Section 22949.80" when referring to the challenged law,[4]

---

[4] Presumably, it did so because the Ninth Circuit panel opted not to use "AB 2571" as shorthand for Business & Professions Code section 22949.80 and instead

but it nonetheless conceded that the plaintiffs from both the *Junior Sports Magazines* and *Safari Club International* appeals had "moved for a preliminary injunction against Section 22949.80 *in its entirety*." Appellees' Petition for Rehearing En Banc 11, *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Nov. 13, 2023) (No. 22-56090), ECF No. 49 (emphasis added). These concessions—made at the time the parties were litigating the initial preliminary injunction motion—should be fatal to the State's post-mandate claim that Appellants intended to challenge only subsection (a).

The district court adopted the parties' practice and generally referred to section 22949.80 as "AB 2571." 2-ER-158-232. In a footnote, the district court did briefly question whether Appellants were challenging the entirety of section 22949.80 or just subsection (a). 2-ER-163. But apparently, the court concluded (correctly) that Appellants were indeed challenging the entire statutory scheme. 2-ER-163.

Even more revealing, perhaps, are the results of searches for other terms. Reference to subsections (b) and (d) show up just once each in the district court filings, both in the order denying the preliminary injunction. 2-ER-163. If the State was making the argument in the first round of this litigation that those subsections should have been severed and preserved under subsection (f), its subtlety in making that point is rather underplayed. No surprise there though. Subsection (f), the severability clause itself, was only mentioned once—and then only by the district

---

adopted the code designation in referring to the statute—with 24 instances of that reference *without* reference to subsections. Appellants continued to refer to the challenged law (in its entirety) as "AB 2571." *See* Appellants' Response to Appellee's Petition for Rehearing En Banc, *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (9th Cir. Dec. 22, 2023) (No. 22-56090), ECF No. 51.

court when describing the challenged statute in its now-reversed order. 2-ER-164. The same goes for the terms "server," "severable," and "severability." 2-ER-164. Ultimately, the district court made no findings or orders related to severability, and neither party cited nor discussed subsection (f). Comparable results were obtained by searching for the same terms in the Ninth Circuit filings.

This pedantic—and, frankly, annoying—refutation of the State's hypothesis that the parties, the district court, and the circuit court were only addressing the constitutionality of subsection (a) is only necessary because the State lacks the candor to admit that (1) every person who touched this case knew that the entirety of AB 2571 has always been at issue and (2) that it never once argued for severance during the first round of litigation. The fact that the district court participated in the State's gaslighting in its order now on appeal is justification enough for this Court to issue its own preliminary injunction and order that it remain in force until final judgment. Ideally, such relief would also put the district court on notice that altering that preliminary injunction without the record reflecting the development of new facts or new law on these issues will constitute reversible error.

## II. THE ENTIRETY OF SECTION 22949.80 IS "LIKELY UNCONSTITUTIONAL"

Appellants' Opening Brief, A.O.B.14-29, and pending Rule 8 motion, Mot. 6-14, set forth the full First Amendment analysis, conclusively establishing that no part of AB 2571 survived this Court's earlier holding that "[section] 22949.80 is likely unconstitutional." *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109, 1121 (9th Cir. 2023). In short, this Court *already* adjudicated the likely unconstitutionality of AB 2571 *in its entirety*. Indeed, because this Court found that Appellants have a right to communicate

marketing material about lawful firearm-related products to both minors and adults, it necessarily found that the means of that communication is also protected. Even so, Appellants have also established that subsection (b) itself restricts protected commercial speech related to the marketing and advertising of firearm-related products to minors. A.O.B.23-26. Since it does, and because this Court already rejected the State's claim that its public safety interests justify restricting that speech, *Jr. Sports*, 80 F.4th at 1117-20, subsection (b)—just like the rest of AB 2571—is "likely unconstitutional."

The State's responsive briefs fail to effectively rebut the arguments made by Appellants. Instead, they fall back on the claim that Appellants failed to meet their burden to prove that subsection (b) should be preliminarily enjoined, presumably because they did not discuss subsection (b) in isolation from the rest of the challenged statute. A.A.B.16-19, 25-30. But that argument, made for the first time on remand, fails because it invites the district court to reject this Court's express holding that Appellants had indeed established that AB 2571 (and not any single subsection of the law) likely violates the First Amendment. As an inferior court, the district court was bound by the result *and the reasoning* of this Court's first decision, and it abused its discretion by rejecting it on remand. *See Sibbald v. United States*, 37 U.S. 488 (1838) ("The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any

other purpose than execution, or give any other or further relief, or review it upon any matter decided on appeal for error apparent.").[5]

Ultimately, even though the State begrudgingly concedes that subsection (a) is likely unconstitutional under this Court's decision in *Junior Sports*, it argues that it may nonetheless continue enforcing subsections (b) and (d). In other words, the State contends that some part of AB 2751 is still viable even though this Court held that Appellants' marketing activities are protected by the First Amendment. *Jr. Sports*, 80 F.4th at 1121. The argument is irrational.

First, this Court's opinion in *Junior Sports*, coupled with the "predicate act canon," is fatal to California's ban on compiling and using subscriber lists to disseminate commercial speech protected by the First Amendment. Second, the State fails to prove that subsection (f), the law's severability clause, can save any portion of AB 2571 under relevant Ninth Circuit precedents.

For these reasons, this Court should reject the State's post hoc rationalization that Appellants proved that only subsection (a) is invalid and reaffirm its holding that "[section] 22949.80 is likely unconstitutional" in its entirety.

---

[5] The State's claim that it has had no opportunity to brief the constitutionality of subsection (b) is misleading, at best. A.A.B.18-19. As Part I shows, the State was well aware—from the start of this litigation all the way through its en banc petition—that Appellants were challenging the *entirety* of section 22949.80. The State thus had *countless* opportunities to raise its argument that subsection (a) and (b) "regulate different conduct" and that the latter restricts only "the collection, use, and disclosure of minors' personal information," and not protected commercial speech. A.A.B.18. It failed to raise that argument, and this Court should deem it waived for purposes of adjudicating Appellants' motion for preliminary injunction.

A. **Under the "Predicate Act Canon" and this Court's Decision in** *Junior Sports,* **the Collection and Use of Minor Contact Information Necessary to Disseminate Appellants' Message Is Protected Commercial Speech; The State's Ban on That Speech Violates the First Amendment**

The State essentially argues that even though *Junior Shooters* magazine has a First Amendment right to market lawful firearm-related products to its minor subscribers, it can nonetheless punish that same magazine with devastating civil fines if it uses its own subscriber list to market firearm-related products to those minor subscribers. This is nonsensical.

Fundamental rights are imbued with the ancillary rights necessary to exercise the textual right. This is not controversial. On the contrary, "[t]he law has long recognized that the '[a]uthorization of an act also authorizes a necessary predicate act.'" *Luis v. United States*, 578 U.S. 5, 26 (2016) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 192 (2012)) (Thomas, J., concurring). "Constitutional rights thus implicitly protect those closely related acts necessary to their exercise." *Id.* Indeed, "'[t]here comes a point … at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself.'" *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting)). Without explicit protection for those implicit predicate acts, enumerated constitutional rights would become meaningless.

The Supreme Court has thus repeatedly held that regulating the tools necessary to engage in the rights of free speech and press itself implicates the First Amendment. *See Minneapolis Star & Trib. Co. v. Minn. Com'r of Revenue*, 460 U.S. 575 (1983) (tax on ink and paper violates First Amendment); *Grosjean v. Am. Press Co.*, 297 U.S. 233

(1936) (licensing tax on gross receipts from advertising violates First Amendment); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (civil liability for defamation for advertising print violates the First Amendment). Likewise, courts recognize that the right to keep and bear arms "implies a corresponding right to obtain the bullets necessary to use them," *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), and "to acquire and maintain proficiency in their use," *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). *See also District of Columbia v. Heller*, 554 U.S. 570, 617-18 (2008) (citing Thomas M. Cooley, *General Principles of Constitutional Law* 271 (2d ed. 1891) (implied right to train with weapons)); *United States v. Miller*, 307 U.S. 174, 180 (1939) (citing 1 Herbert L. Osgood, *The American Colonies in the 17th Century* 499 (1904) (implied right to possess ammunition)). As Justice Thomas explained, "[w]ithout protection for these closely related rights, the Second Amendment would be toothless." *Luis*, 578 U.S. at 27 (Thomas, J., concurring).[6]

What's more, the First Amendment is not merely concerned with the direct effect of taxing the components of exercising freedom of the press (e.g., paper and ink). It is also concerned with the chilling effect such treatment has on the right. "[E]ven without actually imposing an extra burden on the press, the government might be able to achieve censorial effects, for the 'threat of sanctions may deter [the]

---

[6] In *Luis v. United States*, 578 U.S. 5, the Supreme Court held that a pre-trial seizure of funds unconnected to charged criminal conduct—thus making it more difficult for the defendant to hire counsel—thwarts a criminal defendant's Sixth Amendment right to counsel. *Id.* at 10. In his concurrence, Justice Thomas noted that "[i]f that bare expectancy of criminal punishment gave the Government such power [to freeze a defendant's assets before trial simply to secure potential forfeiture], then a defendant's right to counsel of choice would be meaningless, because retaining an attorney requires resources." *Id.* at 26. (Thomas, J., concurring).

exercise [of First Amendment rights] almost as potently as the actual application of sanctions.'" *Minnesota Star & Trib. Co.*, 460 U.S. at 588 (quoting *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 433 (1963)).

Under subsection (b), California imposes a "chilling" civil penalty of up to $25,000 every time a "firearm industry member" with "actual knowledge that a minor … is using or receiving its material" uses a minor's contact information to market any firearm-related product to that minor. This is the essence of what the Court in *Junior Sports* held is protected by the First Amendment.[7] Appellants must compile and use mailing lists, subscriber lists, or membership lists to disseminate their protected commercial speech. These predicate acts are inextricably intertwined with the right to engage in truthful marketing of firearm-related products, and they must be equally protected. Indeed, the act of compiling and using a list of one's customers, subscribers, or members to engage in truthful marketing is as much protected by the First Amendment as the right to obtain and use paper and ink to publish a newspaper. *See Minneapolis Star & Trib. Co.*, 460 U.S. 575. To paraphrase Justice Thomas, "[w]ithout protection for these closely related rights, the [First] Amendment would be toothless." *Luis*, 578 U.S. at 27 (Thomas, J., concurring).

---

[7] Since having "actual knowledge" that minors are receiving their firearm-related marketing is concededly the protected activity, subsection (b) essentially becomes a strict liability statute, imposing a civil penalty of up to $25,000 for each violation. Cal. Bus. & Prof. Code § 22949.80(e)(1)-(6). Unironically, subsection (d) withholds authorization from firearm industry members to collect or retain age information about its customers and subscribers. This scheme is designed to either bankrupt Appellants or keep them bogged down in endless litigation, which will inevitably lead to bankruptcy or continued self-censorship.

Since subsections (b) and (d) restrict protected commercial speech, the only question that remains is whether AB 2571 advances the State's purported public safety interests. This Court has already held that it does not. *Jr. Sports*, 80 F.4th at 1117-19. The Court has also already noted that California has other tools to combat the evils of youth gun violence. *Id.* at 1121. Those findings were binding on the district court and are now binding on this Court under the "rule of mandate" and "law of the case" doctrine. *See Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) (rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision); *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (under the "law of the case," a court may not "reconsider[] an issue that has already been decided by the same court, or a higher court in the identical case").

This Court should reject the State's claim that subsections (b) and (d) are genuine attempts to protect children's privacy. The entire statutory scheme, in fact, represents an overreach aimed at censoring lawful speech. California already has robust laws to safeguard consumer and minor privacy rights, including the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, et seq., the Privacy Rights for Minors in a Digital World Act, Cal. Bus. & Prof. Code §§ 22580, et seq., and the federal Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6501. California is, in fact, relentless in its paternalistic regulatory zeal in this field.

For example, the recently enacted California Age-Appropriate Design Code Act (CAADCA), Cal. Civil Code §§ 1798.99.28-1798.99.40, was recently challenged and partially enjoined by this Court in *NetChoice, LLC v. Bonta*, No. 23-2969, 2024 WL 3838423 (9th Cir. Aug. 16, 2024). Despite its breadth, the CAADCA is far more

measured than subsections (b) and (d). It includes specific terms and conditions on the collection, use, and dissemination of minors' personal information, and it provides safe-harbor provisions that allow vendors to take corrective actions to avoid liability.

In contrast, the provisions of AB 2571 are excessively broad. They impose strict liability and severe civil penalties if Appellants use their own mailing lists, subscriber lists, or membership lists—if those lists include minors and the marketed material is firearm-related. This lack of flexibility or remedial measures underscores the statute's overreach and its potential to unjustly restrict protected speech.

### B. The Doctrine of Severability Cannot Save Any Part of AB 2751

Under the doctrine of severability, after declaring part of a statute to be unconstitutional, a court may excise the unconstitutional part rather than declare the entire statute invalid when appropriate. *See* 2 Norman J. Singer, *Statutes and Statutory Construction* § 44:8, at 585-90 (7th ed. 2009) (surveying the use of severability clauses). The State summarily claims that the district court did not abuse its discretion when it severed subsections (b) and (d) and enjoined only subsection (a). A.A.B.18-19 & n.3. Even assuming the State did not waive its argument that subsection (a) should be severed from the rest of AB 2571, an argument it never once raised before or during the first appeal,[8] the State is wrong thrice over.

---

[8] The State still has not formally raised the issue as a defense. It is not included anywhere in the States' answer, filed just one day before the district court issued the order now on appeal. Answer (June 17, 2024), ECF No. 66. Instead, the State claims, without support, that it is Appellants' burden to raise (and rebut) the issue of severability in the first instance, A.A.B.18 n.3, even though Appellants have always maintained that *all* of section 22949.80 is unconstitutional so the doctrine of severability wouldn't even apply.

First, as Appellants have established, this Court invalidated the entirety of AB 2571 in the first appeal. A.O.B.14-17; Mot.6-10; *see also* Part II.A., *supra*. The district court was "bound to carry the mandate of the upper court into execution and [could] not consider the questions which the mandate laid to rest." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). The district court was not writing on a clean slate, and it had *no* discretion to revisit "issues expressly or impliedly decided by the appellate court." *Id.* (citing *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993)).

Second, the issue of severance is a matter of law and thus subject to de novo review, not the abuse of discretion standard. *See Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 760 (9th Cir. 2004). This is especially true when the district court's ruling rests on a premise of law and facts are either established or undisputed. *Id.* What's more, severance is an issue of state law, *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1120 (9th Cir. 2021), and any interpretation of state law is reviewed de novo, *Platt v. Moore*, 15 F.4th 895, 901 (9th Cir. 2021).

Third, even if the district court had the discretion to analyze the issue anew and potentially save part of the unconstitutional statute, subsection (a) cannot be severed from the rest of the law, so the entire law must be rendered inert. The district court did not conduct a severance analysis at all, and the State treats the issue superficially, at best. A.A.B.18-19 & n.3. While a severability clause "establishes a *presumption* in favor of severance." *Cal. Redevel. Ass'n v. Matosantos*, 53 Cal. 4th 231, 135 (2011) (citing *Santa Barbara Sch. Dist. v. Superior Ct.*, 13 Cal. 3d 315, 331 (1975)) (emphasis added), that is not the end of the analysis. Presumptions can be overcome.

Indeed, the existence of a severability clause does not conclusively determine severability. *Matosantos*, 53 Cal. 4th at 270 (quoting *Santa Barbara Sch. Dist.*, 13 Cal. 3d at 331). If the rest of the law "would be difficult to [constitutionally] apply" or "less effective in achieving the [government's] goals," for instance, a severability clause cannot save it. *Metromedia, Inc. v. City of San Diego*, 32 Cal. 3d 180, 191 (1982). Moreover, for an invalid provision to be severable, it "also 'must be grammatically, functionally, and volitionally separable' from the remainder of the act." *Garcia*, 11 F.4th at 1120 (quoting *Matosantos*, 53 Cal. 4th at 271). "All three criteria must be satisfied." *Id.* (internal quotation omitted). So even if this Court had held that only subsection (a) is invalid, the provision could not be severed from the rest of the statute. The remainder of AB 2571 is either (1) unconstitutional because it outlaws a predicate act of the protected conduct (marketing firearm-related products to minors) and is, therefore, functionally invalid or (2) grammatically invalid.[9]

1. "The functional separability inquiry considers whether the remainder of a law would be 'functionally autonomous' within the statutory scheme." *Id.* (quoting *Barlow v. Davis*, 72 Cal.App.4th 1258 (1999)). A provision is not "functionally autonomous" from a statute's excised clauses if those clauses are "necessary to the measure's operation and purpose." *See id.* (internal quotation omitted). "The remaining provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence *nor inextricably connected to them by policy considerations.*" *Id.* (internal

---

[9] Appellants take no position, at this stage, as to whether the subsections are "volitionally severable," though it would appear they are not for many of the same reasons they are not "functionally severable."

quotation omitted) (emphasis added). Subsection (a) is not just "necessary" to AB 2571's purpose, it is essential to it. Removing it leaves the statute incoherent and untethered to the Legislature's reason for adopting AB 2571.

AB 2571 was designed as a public safety measure meant to discourage youth gun possession and use by restricting access to information about firearm-related products. It was not intended to protect the privacy rights of minors. On this point, the legislative history of AB 2751 is clear. It emphasizes concerns about the "epidemic of gun violence in the United States" and the so-called "problem" of marketing and advertising firearm-related products to minors. 3-ER-277, 281-87. But it does not mention the need to protect minors from the misuse of their personal contact information at all. *See* 3-ER-277-92. And the State never once argued the law served such a purpose during the first round of litigation. *See generally* SER-83-110; FER-4-19; Defendant-Appellee's Answering Brief, *Jr. Sports Mags. v. Bonta*, 80 F.4th 1109 (Jan. 27, 2023) (No. 22-56090), ECF. No. 20. So if the State is correct that subsections (b) and (d) restrict only "the collection, use, and disclosure of minors' personal information," A.A.B.18, the provisions do not serve the stated public safety purpose of AB 2571 and are not functionally separable from subsection (a).

If, on the other hand, the law does restrict commercial speech about firearm-related products directed to minors in violation of the First Amendment, the "functional severability" analysis overlaps Appellants' predicate act canon discussion. *See* Part II.A., *supra.* This Court did not just strike subsection (a); it provided a comprehensive (and doctrinally correct) First Amendment analysis and found AB 2571 to be likely unconstitutional. The decision struck at the heart of California's

19

constitutionally illicit policy of trying to prevent minors (and their parents) from obtaining commercial information about firearm-related products. *Jr. Sports*, 80 F.4th at 1120. One can only wonder how minors and their parents will obtain "advertisements promoting safer guns for minors" if Appellants cannot send them marketing material via the U.S. Mail, email, or social media—all of which are made possible because firearm industry members compile and use personal contact information. In other words, Appellants cannot effectively engage in subsection (a) conduct (which even the State concedes is protected under this Court's *Junior Sports* decision) if they are barred from engaging in subsections (b) and (d) conduct.

No matter how you look at it, the provisions are interdependent, and removing subsection (a) would undermine the remaining law's effectiveness. The entire law is void.

2. Grammatical separability concerns "whether the invalid parts [of AB 2571] can be removed as a whole without affecting the wording or coherence of what remains." *Matosantos*, 53 Cal. 4th at 271 (quotation marks and citations omitted). They clearly cannot because subsections (b) and (d) become incoherent if parts defined by or dependent on subsection (a) are removed.

Subsection (b) reads:

> A **firearm industry member publishing material directed to minors** in this state or who has actual knowledge that a minor in this state is using or receiving its **material**, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is **for the purpose of marketing or advertising to that minor any firearm-related product.**

The bolded words were either defined (in part) by the unenforceable subsection (a) or were declared an unconstitutional purpose of this legislation in this Court's *Junior Sports* opinion. According to the concurrence, AB 2571 "is textbook viewpoint discrimination" against certain speakers. *Jr. Sports*, 80 F.4th at 1121 (VanDyke, J., concurring). Singling out only "**firearm industry members**" for special (unfavorable) treatment when it comes to communicating with minors using their own self-created contact lists violates the First Amendment. It also likely violates the Equal Protection Clause, a claim the original panel previously abstained from deciding. *Id.* at 1120, n.3. The "**published material**" and "**material**" referred to in subsection (b) are clearly references to the commercially inspired content-based marketing and advertising material described in subsections (a)(2)(A)-(F).[10] And the clause "**for the purpose of marketing or advertising to that minor any firearm-related product**" is the specific activity that this Court expressly upheld as protected commercial speech.

Subsection (b) would read as follows if one excises the parts that are unconstitutional or defined by subsection (a):

> A[n] **entity** in this state or who has actual knowledge that a minor in this state is using or receiving its information, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is **for the purpose of receiving the entity's information**.

The resulting provision is nonsensical; it cannot stand on its own.

---

[10] There is no definition of "published material" or "material" in subsection (c), which otherwise provides statutory definitions applicable to section 22949.80.

The same grammatical substitution analysis can be applied to subsection (d) which reads: "This section shall not be construed to require or authorize a **firearm industry member** to collect or retain age information about users or subscribers **of products or services offered**." It becomes "[t]his section shall not be construed to require or authorize a **anyone** to collect or retain age information about users or subscribers."[11] The grammatical severability analysis reduces these subsections to some kind of zombie law, wandering around the statute books looking for someone, somewhere, to impose civil fines of $25,000 per violation for undefined conduct.

\* \* \* \*

Ultimately, whether this Court entertains the State's gambit or reaffirms its earlier decision striking down the entirety of section 22949.80, it can comfortably arrive at the same conclusion by applying the predicate act canon and the severability analysis required by this circuit's precedents.

## III. THE PRELIMINARY INJUNCTION SHOULD APPLY TO EVERY STATE ACTOR EXPLICITLY CHARGED WITH ENFORCING AB 2571

The State's final argument that any injunction should only extend to the "defendant, his officers, agents, servants, employees, and attorneys, and other persons in active concert with them," A.A.B.31-34, is deeply flawed. Appellants already set forth the legal reasons any injunction based on this Court's opinion in *Junior Sports* can (and must) be applied against all the state actors named in the statute, including all

---

[11] Appellants do not expressly address subsections (c) or (e) in the severability analysis because these are clearly definitional and enforcement subsections that have no meaning if subsections (a), (b), and (d) are constitutionally infirm. This does not mean that Appellants are not challenging all provisions of section 22949.80.

district attorneys, county counsel, and city attorneys in California. A.O.B.32-35; Mot. 16-19. They will not repeat them here. The State's half-hearted opposition to applying the preliminary injunction against all of the state actors that California named in its own statute is little more than a "we agree with the judge" argument that the trial court acted within its discretion. But issues of law, like the interpretation of a statute, are reviewed de novo, not for abuse of discretion. *See Harris*, 366 F.3d at 760.

What's more, the State's suggestion that these subordinate state actors are not likely to sue is small consolation to people like Appellants. The publishers of *Junior Shooters* magazine would still have to defend against any rogue state actor who wants to take a shot at "firearm industry members" just because the order out of this case only enjoined the Attorney General's office. Even if such lawsuits are eventually dismissed, that kind of frivolous litigation will either keep Appellants tied up in expensive litigation or require them to forgo their First Amendment rights to avoid the risk of bankruptcy in $25,000 increments. This "chilling effect" on First Amendment rights is the very reason California has adopted SLAPP laws—but those laws unfortunately do not apply to strategic litigation that only chills commercial speech. *See* Cal. Civ. Proc. Code § 425.16, 425.17.

In the end, the Attorney General represents the State of California. California's legislature passed AB 2571, authorizing "the Attorney General or … any district attorney, county counsel, or city attorney in any court of competent jurisdiction" to enforce its marketing ban. Cal. Bus. & Prof. Code § 22949.80(e)(1). The legislature could have limited enforcement to only the Attorney General's office, but it did not.

When you buy the tree, you get the bark. Any injunction should enjoin the state actors called out by name in the statute.

## CONCLUSION

This Court already held that California has sufficient tools to address minors illegally acquiring guns without infringing on the First Amendment. Assuming (tongue planted firmly in cheek) that subsection (b) was nothing but a privacy statute and not part of a statutory scheme to stop commercial speech about firearm-related products, this Court should find (again) that subsections (b) and (d) likely violate the First Amendment and direct the lower court to enter preliminary injunction enjoining the enforcement of *all* of Business & Professions Code section 22949.80, against all state actors authorized by this same law to enforce it, while this case proceeds to final judgment.


Dated:  September 17, 2024      **MICHEL & ASSOCIATES, P.C.**

         s/ Anna M. Barvir
         Anna M. Barvir
         *Counsel for Plaintiffs Junior Sports Magazines, Inc.,*
         *Raymond Brown, California Youth Shooting Sports*
         *Association, Inc., Redlands California Youth Clay*
         *Shooting Sports, Inc., California Rifle & Pistol*
         *Association, Incorporated, The CRPA Foundation,*
         *and Gun Owners of California, Inc.*


Dated:  September 17, 2024      **LAW OFFICES OF DONALD KILMER, APC**

         s/ Donald Kilmer
         Donald Kilmer
         *Counsel for Plaintiff Second Amendment Foundation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-4050

I am the attorney or self-represented party.

**This brief contains** | 6,506 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated _____.

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Anna M. Barvir | **Date** | September 30, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2024, an electronic PDF of APPELLANTS' REPLY BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: September 17, 2024                   Respectfully submitted,

                                            **MICHEL & ASSOCIATES, P.C.**

                                            s/ Anna M. Barvir
                                            Anna M. Barvir
                                            *Counsel for Plaintiffs-Appellants*